**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: ETHICON, INC. PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** _____ **THIS DOCUMENT RELATES TO:** *Donna Parks v. Ethicon, Inc. et al.* **Case No. 2:14-cv-10221** | **Master File No. 2:12-MD-02327 MDL No. 2327** **JOSEPH R. GOODWIN U.S. DISTRICT JUDGE** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE
CERTAIN CASE-SPECIFIC OPINIONS OF DANIEL ELLIOTT, M.D.**

## I.      Introduction

Plaintiff Donna Parks opposes Defendants' Motion to Exclude Certain Case-Specific Opinions of Daniel Elliott, M.D. (ECF No. 36) and responds to the supporting Memorandum (hereinafter "Mem"). *See* ECF No. 37.

## II.     Argument

### A.      Dr. Elliott's opinions about Ms. Parks' mental health as it relates to her mesh complications are admissible

Defendants seek to exclude opinions from Dr. Elliott regarding "the long-term negative impact" that the injuries Ms. Parks has suffered including leading "to feelings of isolation, loneliness, depression and suicide" on the basis Dr. Elliott is unqualified "to opine about mental health." Mem. at 1. Dr. Elliott is a Professor of Urology, section of Female Urology and Reconstructive Surgery, at the Mayo Clinic Graduate School of Medicine. Ex. 1 at 1-3. In his expert report Dr. Elliott explains how pelvic organ prolapse is a quality-of-life issue, not a life-threatening condition. Ex. 1 at 4-6, 33-34. Accordingly, the "success" of pelvic organ prolapse surgery depends on whether the procedure eliminates the patient's quality-of-life symptoms. Ex. 1 at 4-6, 18-20. Quality of life assessments are central to the treatment of pelvic organ prolapse, including mesh surgery, and Dr. Elliott, as a POP and SUI expert and surgeon, is well-qualified to offer testimony on Ms. Parks quality of life. *See* Fed. R. Evid. 702.

Defendants fare no better arguing Dr. Elliott's "quality of life" opinions are unhelpful to the jury. *See* Mem. at 1-2 On this point, Dr. Elliott connects the injuries Ms. Parks suffered, including emotional injuries, to the Gynemesh PS. Ex. 1 at 22-35, 61-63. Dr. Elliott's opinions thus "aid the jury or other trier of fact to understand or resolve a fact at issue." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999).

## B.     Defendants recycle arguments against Dr. Elliott's general causation opinions

Defendants contend that Dr. Elliott's opinions about the Gynemesh Instructions for Use ("IFU") are "unreliable and irrelevant." Mem. at 2. In his expert report, for example, Dr. Elliott opines that "Ethicon did not fully disclose" in the IFUs the risks of implanting the Gynemesh in Ms. Parks. Ex. 1 at 35-38. Dr. Elliott then enumerates a myriad of "significant adverse events and risks that were known" by Defendants but excluded from the Gynemesh IFUs. *Id*. These are general causation opinions, and the Court has "directed the parties to file general causation objections in the main MDL." *In re Ethicon, Inc.*, 2017 WL 1128638, at *2 (S.D. W. Va. Mar. 24, 2017); *accord In re Ethicon, Inc.*, 2017 WL 1046286, at *2 (S.D. W. Va. Mar. 16, 2017). Defendants' arguments against Dr. Elliott's general causation opinions should be disregarded because they are asserted in the wrong venue. *See Ethicon*, 2017 WL 1128638, at *2; *Ethicon*, 2017 WL 1046286, at *2.

## C.     Dr. Elliott's opinions on the Gynemesh and informed consent are admissible

Even if considered, Defendants' informed consent arguments fall short. "As an initial matter," the defense contends, "there is no lack of informed consent claim in this case, and Dr. Elliott does not make reference to any informed consent standard in his report." Mem. at 2.[1] Defendants never develop this argument as required. *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012). They fail to cite a single, allegedly deficient conclusion in Dr. Elliott's expert report. Mem. at 2-3. "Without more specific information," the Court is "unable to review

---

[1] This same argument, quoted in this exact same language is made by Defendants, case after case, irrespective of the varied testimony from the implanters in these cases. This type of boilerplate assertion casts doubt on the strength and veracity of Defendants' argument.

the merits of such a motion." *Bellew v. Ethicon, Inc.*, Case No. 2:13-cv-22473, ECF No. 265 at 22 (S.D. W. Va. Nov. 20, 2014).

Above all, the Court already has allowed Dr. Elliott to "testify about the specific risks of implanting mesh and whether those risks appeared on the relevant IFU." *In re Ethicon, Inc.*, Case No. 2:12-md-02327, ECF No. 6409 at 2 (S.D. W. Va. July 27, 2018). In other decisions, the Court has found Dr. Elliott can offer "testimony about the adequacy of the warning and the knowledge of the medical community in general," *Ethicon*, 2017 WL 1128638, at *2; *accord Ethicon*, 2017 WL 1046286, at *2. Thus, Dr. Elliott can identify the particular risks with the Gynemesh and can explain how the devices' IFUs and Defendants' product literature fail to disclose these risks. *Hovey v. Cook, Inc.*, 2015 WL 1405565, at *10 (S.D. W. Va. Mar. 26, 2015); *Watkins v. Cook, Inc.*, 2015 WL 1395773, at *10 (S.D. W. Va. Mar. 25, 2015). All of this is ignored in Defendants' cursory argument, underscoring the glaring deficiencies with the defense's general causation attack. *See Belk*, 679 F.3d at 152 n.4; *Bellew*, ECF No. 265 at 22.

Defendants provide not a single reason why the Court should turn away from its prior decisions allowing Dr. Elliott to offer "testimony about the adequacy of the warning and the knowledge of the medical community in general," *Ethicon*, 2017 WL 1128638, at *2; *accord Ethicon*, 2017 WL 1046286, at *2. Still, Defendants urge the Court to exclude his IFU opinions because "Dr. Elliott does not make reference to any informed consent standard in his report." Mem. at 2. But Dr. Elliott is not discussing "warnings in a regulatory context." *Hovey*, 2015 WL 1405565, at *10. Instead his reports identify particular risks with the Gynemesh and explain how the IFUs omit these risks. *See*, e.g., Ex. 1 at 35-38. A "urologist like Dr. Elliott is qualified to make this comparison." *Hovey*, 2015 WL 1405565, at *10; *accord Watkins*, 2015 WL 1395773, at *10. The Eleventh Circuit has found, similar evidence from a physician suffices for plaintiffs

to carry their burden of proof on failure-to-warn claims in another mesh case. *See Eghnayem v. Boston Scientific Corp.*, 873 F.3d 1304, 1321-22 (11th Cir. 2017).

Citing *Tyler* and *Diet Drugs*, the defense contends Dr. Elliott should be disqualified for failing to identify a "legal" or "specific industry" standard of informed consent in his report. Mem. at 2-3. Defendants fail to show, however, how these cases reflect California law, the governing law in this case. *See* Mem. at 2. This is unsurprising, for in discussing whether evidence was adequate to sustain a verdict for failure to warn under Florida law, the Eleventh Circuit never identified "legal" or "specific industry" standards on informed consent as a prerequisite to recovery on such claims. *See Eghnayem*, 873 F.3d at 1322 (finding burden of proof "carried" where "Eghnayem offered expert testimony from Dr. Margolis that these warnings failed to inform doctors that 'a patient may need multiple operative procedures to remove the mesh'; that 'when you remove portions of the mesh, part of the normal tissue has to come out with it'; so that 'you can[not] just take the mesh out and everything is fine'; and that mesh implantation ultimately may be 'irreversible.'").

*Tyler* and *Diet Drugs* are also very different cases on the facts. In *Tyler*, the excluded expert admitted in deposition he did "not have any specialized training on determining whether a manufacturer would have a duty to warn." *Tyler v. Sterling Drug, Inc.*, 19 F. Supp. 2d 1239, 1245 (N.D. Okla. 1998). The *Tyler* expert relied, in stark contrast to Dr. Elliott here, "on his training as a psychologist to employ the general principles of informed consent to determine whether a manufacturer has a duty to warn the general public," contending the "issue should be resolved under the broad umbrella of human rights and self determination." *Compare id*. with Ex. 1 at 4-6, 35-38. And in *Diet Drugs*, the court found "Dr. Puma's expertise, garnered largely from the study of medical ethical issues in individual patient cases, simply does not qualify him

to render opinions concerning the appropriate conduct of pharmaceutical companies in the manufacture and marketing of drugs." *In re Diet Drugs Litig.*, 2001 WL 454586, at *9 (E.D. Pa. Feb. 1, 2001). In contrast, Dr. Elliott has substantial experience with IFUs for medical devices, including training residents on IFUs. Ex. 1 at 1-3.

> **D.** **Dr. Elliott's opinions regarding the IFU and informed consent are not inadmissible due to the facts of this case**

Defendants contend "there is no lack of informed consent claim in this case," Mem. at 2. As with other "arguments" in their cursory brief, Defendants never substantiate this assertion with any facts or discussion, rendering it waived. *Belk*, 679 F.3d at 152 n.4; *see also Bellew*, ECF No. 265 at 22. The defense is effectively moving to exclude Dr. Elliott's opinions because Ms. Parks, in its view, cannot prove causation under the learned intermediary doctrine. Mem. at 2-3. "However, there is no requirement in Daubert, or any other controlling authority, that the proffering party must 'prove' anything to the court before the testimony in question can be admitted." *Maryland Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). Defendants can put Ms. Parks' evidence to the test at summary judgment, but not here through a challenge to expert opinions.

> **E.** **Dr. Elliott does not speculate about the state of mind of witnesses**

According to Defendants, "there is no reliable basis for Dr. Elliott to speculate what Plaintiff's implanter, Dr. Shawn Menefee, or ***any other*** clinician knew about the risks of Gynemesh PS." Mem. at 3 (emphasis added). Once more, the defense asserts a challenge to Dr. Elliott's general causation opinions in a motion against his specific causation opinions. Again, Defendants disregard the Court's directive that the parties must challenge "general causation objections in the main MDL." *Ethicon*, 2017 WL 1128638, at *2; *accord Ethicon, Inc.*, 2017 WL 1046286, at *2. These additional challenges to Dr. Elliott's general causation opinions should be

ignored because they are asserted in Ms. Parks' individual litigation, not in the Ethicon MDL as required. *See id*.

As with their other general causation attacks, Defendants fail to develop, and to properly support, this argument. *See Belk*, 679 F.3d at 152 n.4. Their "argument" amounts to a lone paragraph, followed by a string citation of cases. Mem. at 3. Moreover, Dr. Elliott is opining on the significant, adverse events and risks that were known by the greater medical community but not included in the Gynemesh IFUs. Ex. 1 at 35-38. Dr. Elliott, as the Court has already determined, "may testify about the specific risks of implanting mesh and whether those risks appeared on the relevant IFU," *Ethicon*, ECF No. 6409 at 2, and can offer "testimony about the adequacy of the warning and the knowledge of the medical community in general," *Ethicon*, 2017 WL 1128638, at *2; *accord Ethicon*, 2017 WL 1046286, at *2. Defendants provide no justification for disallowing Dr. Elliott from testifying in this particular case about individual risks with the Gynemesh and how the product IFUs omit these hazards when the Court has permitted him to do so in others. *Hovey*, 2015 WL 1405565, at *10; *Watkins*, 2015 WL 1395773, at *10.

Defendants cite several cases to the effect that opinions about a physician's state of mind are inadmissible. Mem. at 3. The Court's decisions in *Free* and *Martin*, which Defendants cite, Mem. at 3, doom their effort to exclude Dr. Elliot's expert opinions. Although the Court agrees that "[t]o the extent that testimony seeks to attribute a state of mind to the implanting surgeon, … [e]xperts may not testify as to what other individuals did or did not know," it is the very next sentence that controls: "However, to the extent Ethicon seeks to exclude Dr. Rosenzweig's testimony about the adequacy of the warning and the knowledge of the medical community in general, I disagree." *See In re Ethicon, Inc. Litig.*, 2017 WL 660017, at *3 (S.D. W. Va. Feb. 14,

2017); *Martin v. Ethicon, Inc.*, 2017 WL 6348627, at *2 (S.D. W. Va. Dec. 12, 2017). Dr. Elliott, as he does here (Ex. 1 at 35-38), "may properly offer opinions on these topics." *Ethicon*, 2017 WL 660017, at *3; *Martin*, 2017 WL 6348627, at *2.

The defense's other cases are no different. *Guinn* also holds physicians like Dr. Elliott "may testify about the general medical community's knowledge and the sufficiency of the instructions for use," *Guinn v. Ethicon, Inc.*, Case No. 2:12-cv-01121, ECF No. 119 at 5 (S.D. W. Va. Feb. 3, 2017). In *Nall*, the Court reiterates that "[e]xpert witnesses may properly offer opinions" about "factual issues or the knowledge of the medical community in general," *Nall v. C.R. Bard, Inc.*, 2018 WL 524632, at *2 (S.D. W. Va. Jan. 23, 2018). And in *Taxotere*, the court only addressed the "case-specific informed consent opinion" of the plaintiff's expert. *In re Taxotere Litig.*, 2019 WL 355421, at *2 (E.D. La. Aug. 5, 2019). The court explained: "Because Plaintiff's treating physician … is available to testify, [the plaintiff's expert] will not be allowed to opine on the fact of [the plaintiff's] case. [The treating physician] can testify about how he would have responded to an adequate warning from Defendants." *Id*. Dr. Elliott, however, is not making this conclusion. *See* Ex. 1 at 35-38. And the *Taxotere* court held, much like this Court has found regarding "testimony about the adequacy of the warning and the knowledge of the medical community in general," *Ethicon*, 2017 WL 1128638, at *2, that the plaintiff's expert could testify about general medical standards and guidelines. *Taxotere*, 2019 WL 355421, at *2. Defendants' cases do not support the Motion to Exclude.

## III.   Conclusion

For the above reasons, Defendants Motion to Exclude Certain Case-Specific Opinions of Daniel Elliott, M.D. should be denied.

Date: January 3, 2020                     Respectfully Submitted,

                                          /s/      William J. Doyle II

                                          DOYLE LOWTHER LLP
                                          William J. Doyle II
                                          John A. Lowther
                                          4400 NE 77th Avenue, Suite 275
                                          Vancouver, WA 98662
                                          (360) 818-9320
                                          (360) 450-3116 fax
                                          bill@doylelowther.com
                                          john@doylelowther.com

                                          *Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2020, I electronically filed the foregoing Opposition to Defendants Motion To Exclude Certain Opinions of Expert Daniel Elliott, MD with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.


                     By: /s William Doyle, II

                          William Doyle, II (CA #188069)
                          John Lowther (CA #207000)
                          DOYLE LOWTHER LLP
                          4400 NE 77th Avenue, Suite 275
                          Vancouver, WA 98662
                          Phone: (360) 818-9320
                          Fax: (360) 450-3116
                          bill@doylelowther.com
                          john@doylelowther.com
                          *Attorneys for Plaintiff*