1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11

DONNA PARKS, et al.,

Case No.: 20cv0989-TWR(RBB)

12

Plaintiffs,

13

v.

14

ETHICON, INC., et al.,

15

Defendants.

16
17

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO ENFORCE MDL DISCOVERY ORDER REGARDING COMPENSATION OF DR. DANIEL ELLIOTT [ECF NO. 95] AND GRANTING MOTIONS TO SEAL [ECF NOS. 99, 113]**

18
19

On August 28, 2020, Defendants Ethicon, Inc. and Johnson & Johnson filed a

20

Motion to Enforce MDL Discovery Order Regarding Compensation of Dr. Daniel Elliott

21

[ECF No. 95]. Multiple filings ensued. Plaintiff Donna Parks filed an opposition to the

22

motion on September 14, 2020 [ECF No. 97]. Defendants filed a reply and a motion for

23

leave to conditionally file a confidential document under seal on September 23, 2020

24

[ECF Nos. 99, 102]. On October 14, 2020, Defendants filed a notice of supplemental

25

authority [ECF No. 107]. Plaintiff filed a response to Defendants' supplemental authority

26

and a motion to file a document under seal on October 21 and 22, 2020, respectively

27

[ECF Nos. 112, 113]. Defendants filed an opposition to Plaintiff's motion to seal on

28

/ / /

1

October 22, 2020 [ECF No. 115].  The Court took this matter under submission on October 23, 2020 [ECF No. 116].

The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  For the reasons discussed below, Defendants' motion is **GRANTED IN PART and DENIED IN PART**.

## I.    BACKGROUND

Plaintiff alleges that she sustained injuries relating to the surgical implantation of Gynemesh PS, a pelvic mesh device manufactured by Defendants.  (Compl. 1-5, ECF No. 1.)  She and her spouse, Delbert Parks, filed this action on February 13, 2014, as part of a multidistrict litigation ("MDL") action in the Southern District of West Virginia, In Re: Ethicon, Inc. Pelvic Repair System Products Liability Litigation, MDL No. 2327 ("Ethicon MDL"), Case No. 2:12-md-2327.  (Id.)[1]  The Ethicon MDL was one of seven MDLs totaling over 100,000 cases assigned to the Honorable Joseph R. Goodwin, United States District Judge, by the Judicial Panel on Multidistrict Litigation.  (May 14, 2020 Order 1, ECF No. 55.)  On May 14, 2020, Judge Goodwin transferred this case and thirty-four other matters to their appropriate jurisdictions following the completion of discovery and the briefing of dispositive and Daubert motions.  (Id.)  The transfer order stated, "Upon transfer, I urge the receiving court to immediately set these cases for trial without reopening discovery.  Further discovery will only result in unjust delay. Extensive development of these cases over a period of years has made such further action completely unnecessary."  (Id.)

**A.    Defendants' Motion to Compel Filed in the MDL Court**

The matter presently before the Court arises out of Defendants' Motion to Compel Dr. Daniel Elliott to Produce Compensation Records, filed in the MDL court on December 16, 2019, in this case, Parks v. Ethicon, Inc., et al., Case No. 2:14-cv-10221,

---

[1] On September 18, 2019, Plaintiff filed a Suggestion of Death on the Record indicating that Delbert Parks died on February 15, 2019 [ECF No. 23].

20cv0989-TWR(RBB)

and two other Ethicon MDL cases, <u>Batson v. Ethicon, Inc., et al.</u>, Case No. 2:14-cv-

06455, and <u>Westerfield v. Ethicon, Inc., et al.</u>, Case No. 2:14-cv-09748.  (Defs.' Mot. 6,

ECF No. 95; <u>id.</u> Attach. #8 Benedict Decl. Ex. G [Defs.' Mot. Compel], at 2-5.)[2]

Defendants' motion, brought pursuant to Federal Rules of Civil Procedure Rules 37(a)

and 45(d)(2)(B)(i), requested that United States Magistrate Judge Cheryl A. Eifert

compel the plaintiffs' expert in the three cases, Daniel Elliott, M.D., to produce "all of his

invoices and payment documents related to his services rendered in generating a report or

testifying as an expert witness in any pelvic mesh case during the past five years,

including documents demonstrating the party on whose behalf Dr. Elliott acted, the name

of the lawyer or law firm that retained Dr. Elliott, the rate charged, the total amount

billed, and the amount of any payment made to Dr. Elliott (as redacted so as not to reveal

attorney work product or privileged information)."  (<u>Id.</u> Attach. #8 Defs.' Mot. Compel,

at 2.)  Defendants argued that Dr. Elliott had not produced documents relating to his

compensation in pelvic mesh cases to his deposition as requested in Document Request

Nos. 2, 32, and 33 of their deposition notice.  (<u>Id.</u> at 3; <u>see also</u> <u>id.</u> at ex. A [Elliott dep.

notice], at 11, 14-15.)  They contended that in light of Judge Eifert's rulings in "virtually

identical discovery dispute[s]" on November 7, 2019, in which the court ordered the

production of compensation information from the plaintiffs' expert witnesses in four

other Ethicon MDL cases, Dr. Elliott should have produced the requested compensation

documents at his November 30, and December 1, 2019 depositions.  (<u>Id.</u> Attach. #8

Defs.' Mot. Compel, at 3-4.)[3]

---

[2] Plaintiff's counsel in this case, Christopher Cantrell, Esq., also represents the plaintiffs in <u>Batson</u> and <u>Westerfield</u>.  (Defs.' Mot. Attach. #3 Benedict Decl. Ex. B [hearing tr. (Jan. 14, 2020)], at 2-3, ECF No. 95.)

[3] On November 7, 2019, Judge Eifert held a telephonic motions hearing in <u>Carbon v. Ethicon, Inc., et al.</u>, Case No. 2:12-cv-04269, <u>Burris v. Ethicon, Inc., et al.</u>, Case No. 2:14-cv-24320, and <u>Mallow v. Ethicon, Inc., et al.</u>, Case No. 2:16-cv-08013, and ordered as follows:  "I'm going to order the experts to provide their invoices for any pelvic mesh case in which they acted as an expert who generated a report or who appeared to testify in either deposition or at trial for the last five years."  (Defs.' Mot. Attach. #5 Benedict Decl. Ex. D [hearing tr. (Nov. 7, 2019)], at 12, ECF No. 95.)  She continued, "[T]he invoices

1    At his deposition in the <u>Parks</u> case, Dr. Elliott testified that he had not compiled a

2  list of cases in which he had testified as an expert or by deposition and had not brought

3  any related compensation records with him based on the advice of Plaintiff's counsel.

4  (<u>Id.</u>, at ex. E [Elliott dep. tr.], at 76-77.)  During the deposition, Plaintiff's attorney, Mr.

5  Cantrell, instructed Dr. Elliott not to answer Defendants' counsel's question about the

6  amount of money he had made for his work as an expert in pelvic mesh litigation.  (<u>Id.</u> at

7  77.)

8  **B.    <u>Judge Eifert's Ruling on Defendants' Motion to Compel</u>**

9    On January 14, 2020, Judge Eifert held a telephonic hearing on Defendants'

10  motion to compel the production of Dr. Elliott's compensation records.  (<u>Id.</u> Attach. #3

11  Benedict Decl. Ex. B [hearing tr. (Jan. 14, 2020)], at 2, 4.)  The judge stated, "I think it's

12  pretty clear, from my order in <u>Ferrer</u>, that I do think that these kinds of records are

13  relevant and therefore they would be subject to disclosure unless they are privileged,

14

15  ───────────────

16  ought to show dates, amounts billed, who the attorney was, who the party was, and . . . that sort of

17  fundamental information."  (<u>Id.</u> at 12-13.)  Additionally, she ordered the experts to "produce any
   documents showing . . . what amounts they were actually paid to the extent that's available."  (<u>Id.</u> at 13.)

18  To the extent that the experts did not have this information, she stated that "at a very minimum they
   need to provide information to Ethicon as to what the name of the case was that they appeared in and on

19  whose behalf they appeared and the name of the attorney or the law firm that they dealt with . . . ."  (<u>Id.</u>

20  at 15.)

       That same day, Judge Eifert issued a written ruling in <u>Ferrer v. Ethicon, Inc., et al.</u>, Case No.

21  2:12-cv-04591, concerning a dispute over whether the plaintiff's expert witness was required to comply
   with a subpoena seeking documents related to the expert's income from participating in pelvic mesh

22  cases.  (<u>Id.</u> Attach. #6 Benedict Decl. Ex. E [<u>Ferrer</u> order (Nov. 7, 2019)], at 2.)  The judge ordered the
   plaintiff's expert to produce "all invoices and payment documents related to his services rendered in

23  generating a report or testifying as an expert witness in any pelvic mesh case during the past five years."
   (<u>Id.</u>)  The order further stated, "At a minimum, the documents should demonstrate the party on whose

24  behalf [the expert] acted, the name of the lawyer or law firm that retained [the expert], the rate charged,
   the total amount billed, and the amount of any payment made to [the expert]. . . .  To the extent [the

25  expert] served as an expert witness in cases, but cannot locate invoices or payment information, he shall
   provide Defendants with a list of those cases, including the case style, the name of the law firm that

26  retained him, and the dates of the expert services."  (<u>Id.</u>)

       Plaintiff's counsel in this case did not represent the plaintiffs in <u>Carbon</u>, <u>Burris</u>, <u>Mallow</u>, and

27  <u>Ferrer</u>, and Plaintiff's expert in this case, Dr. Elliott, did not serve as the plaintiffs' expert in those

28  matters.

which they aren't privileged." (<u>Id.</u> at 5.)  She reasoned, "I think it's clear that this kind of documentation is important on the issue of bias." (<u>Id.</u> at 8.)  She also clarified, "If this expert is required to produce his compensation records, then that same ruling is going to apply to every expert regardless of whose expert it is, whether it's a defense expert or plaintiffs' expert." (<u>Id.</u> at 11.)

Judge Eifert then explained her ruling in <u>Ferrer</u>:

> What I've done -- what I did in <u>Ferrer</u> is I limited it to transvaginal mesh cases and I didn't allow or require the production of any communications, any tax returns.  It was basically just the bare bones of here's what I billed.  Here's what I was paid and that was it.  If the expert had that on an invoice that set out exactly what the expert did, the expert was permitted to redact the portions that described the activity because that really isn't important.  All that's important is what they billed, who they worked for, what law firm they worked for, what side they worked for and how much they were paid.

(<u>Id.</u> at 13-14.)  After hearing argument from counsel, she continued:

> Now, the best way I can go about this is, first of all, Dr. Elliot[t] needs to prepare the list of cases he has testified in.  I think the list requires him to do it for four years and maybe include every case and that's not my issue today.  My issue is the list of cases that he has participated in as an expert and either given a report or a deposition, appeared at trial, or any combination of those, in transvaginal mesh cases, in the MDL cases, and in any state cases that have involved transvaginal mesh.

> So he needs to prepare a list and give that to the defendants.  And then he needs to provide them with the bare-bones documents that I have described already related to the amount of money he's made.  He doesn't need to give percentages of his overall income.  He doesn't need to give income tax returns or 1099s or any of that stuff.  He just needs to produce his invoices and any payment records that he has.  And it needs to be clear on those records in what case he testified or participated, who the lawyer was that retained him, what side he was testifying on behalf of, and then how much he billed and how much he made.  That's what I think he needs to give to them.

(<u>Id.</u> at 17.)

In response to Plaintiff's counsel's statement that Dr. Elliott had testified that he did not keep his invoices and that he sent 1099 forms received from law firms to his accountant,[4] Judge Eifert stated:

> Well, if that's all that's available, then obviously I'm not going to require him to create documents that no longer exist or to recreate them. The only thing he does have to create is really what he would be required to create anyway and that's the list of cases and I would hope he would already have those.  But I don't think it matters much to Ms. Modak-Truran[5] to find out, you know, say the Smith firm paid him $300,000 in a period of four years.  Well, that's important to know.  And the Smith firm is a plaintiffs' law firm and that's important to know.  And he's already testified on behalf of the plaintiffs, that's important to know.  But whether he still has an original invoice or not, as long as she knows how much money he has earned during the course of the MDLs, that's the important thing.  Not necessarily just the MDLs.  Let me make sure I make that clear.  It also includes state cases where he has testified that involved the same sort of issues with the transvaginal and pelvic meshes.

(Id. at 18-19.)  When Plaintiff's counsel expressed concern about the process Dr. Elliott would need to go through to compile this information, Defendants' counsel stated,

> I do want to put on the record that we agree with you.  We do want to reach some sort of agreement with plaintiffs' counsel on how we can streamline getting the information.  We do not need 1099s.  I really need the numbers, but they have to be real numbers.  I don't have to see actual invoices.  If the expert is saying and will say at trial that these are the real numbers, we're fine with that, as long as it's based in fact.  I will work with [Plaintiffs' counsel, Mr. Cantrell] on that, Your Honor.

---

[4] At his deposition in the Batson case, which was taken the day before his deposition in Parks and which involved the same counsel for both Plaintiff and Defendants, Dr. Elliott testified that he only keeps his invoices and financial records in cases where he has been hired as an expert "until they are paid." (Defs.' Mot. Attach. #7 Benedict Decl. Ex. F [Batson dep.], at 23, ECF No. 95.)  When asked if he provided 1099 forms to his accountant to be included on his tax returns, he responded, "My financial or the tax accountant has all the records that I've received."  (Id.)

[5] Defendants were represented by Anita Modak-Truran of the Butler Snow firm in Nashville, Tennessee in the MDL.  (Defs.' Mot. Attach. #3 Benedict Decl. Ex. B [hearing tr. (Jan. 14, 2020)], at 3.

20cv0989-TWR(RBB)

1   (Id. at 20.)  Judge Eifert responded, "Maybe what you would want to do is have [Dr.
2   Elliott] do an affidavit just verifying that these are true and correct figures so that there
3   isn't any confusion over what he's telling you.  You guys can work that out any way you
4   want."  (Id. at 20-21.)  Judge Eifert indicated, after consulting with counsel, that
5   production should be made within forty-five days (i.e., February 28, 2020).  (Id. at 19-
6   20.)  On January 15, 2020, Judge Eifert issued an order stating, "For the reasons
7   discussed during the [telephonic hearing held on January 14, 2020], the court GRANTS
8   Defendants' Motion to Compel Dr. Daniel Elliott to Produce Compensation Records."
9   (Id. Attach. #2 Benedict Decl. Ex. A [Jan. 15, 2020 order], at 1.)

10  **C.**   **The Present Motion**

11        In the motion presently before the Court, Defendants seek an order pursuant to
12  Rule 37 requiring the immediate production of Dr. Elliott's compensation records ordered
13  to be produced in the MDL, permitting Defendants to take a two hour deposition of Dr.
14  Elliott regarding his compensation records, requiring Plaintiff's counsel to pay for Dr.
15  Elliott's time for the two hour deposition, awarding to Defendants attorney's fees
16  incurred in seeking to enforce Judge Eifert's order, striking Dr. Elliott as an expert in this
17  case if he fails to produce the records, and granting any other relief deemed appropriate
18  by the Court.  (Id. Defs.' Mot. at 9-10.)  Defendants contend that sanctions are warranted
19  because "Dr. Elliott and the Doyle Lowther law firm have violated Judge Eifert's Order
20  and engaged in an extraordinary series of dilatory tactics."  (Id. at 9.)  Plaintiff contends
21  that Dr. Elliott has always intended to comply with Judge Eifert's order but was delayed
22  due to "difficulty in recreating [his] compensation without the benefit of invoices, which
23  required the help of a number of [third parties]," as well as the Covid-19 pandemic.
24  (Pl.'s Opp'n 4, ECF No. 97.)  Plaintiff also asserts that "Defendants' own actions in
25  repeatedly seeking to expand the scope of Judge Eifert's order in both content and
26  application also contributed to the delay."  (Id.)

27        On September 14, 2020, the same day that Plaintiff filed her opposition to the
28  present motion, Dr. Elliott signed a declaration concerning his compensation as an expert

in pelvic mesh cases, (see ECF No. 100 [sealed]), and Plaintiff produced a "Notice of Prior Testimony of Daniel Elliott, [M.D.]" setting forth a list of cases in which Dr. Elliott had testified as an expert witness in the past four years, (see Defs.' Reply Attach. #3 Wes Decl. Ex. B [Notice Prior Test.], at 2-5, ECF No. 102).  Defendants contend that the list of cases provided by Dr. Elliott is only a "partial list" and that both the list and Dr. Elliott's declaration are "demonstrably inaccurate and incomplete."  (Defs.' Reply 2, ECF No. 102.)  Defendants also argue that Plaintiff's efforts to limit the use of Dr. Elliott's compensation information to selected cases should not be permitted.  (Id. at 7-8.)

On October 14, 2020, Defendants filed a Notice of Supplemental Authority to notify the Court of a ruling issued in Smith v. Ethicon, Inc., et al., Case No. 3:20-cv-00851-AC (D. Or. Oct. 13, 2020).  (See Defs.' Notice Suppl. Auth. Ex. A [Smith order], at 5-21, ECF No. 107.)  On October 21, 2020, Plaintiff filed a response to Defendants' supplemental authority [ECF No. 112].  Attached to Plaintiff's response was an exhibit described as a "spreadsheet identifying the case name, number and location for every deposition or trial testimony in the previous five years, including the name(s) of the law firm(s) that retained him for that case," as well as the "Notice of Prior Testimony of Daniel Elliott, [M.D.]" previously provided to the Court by Defendants.  (Pl.'s Resp. Defs.' Suppl. Auth. 4, ECF No. 112; id. Attach. #4 Ex. D [Notice Prior Test.], at 2-5; id. Attach. #5 Ex. E [spreadsheet], at 2-4.)

Also presently before the Court are Defendants' motion for leave to conditionally file a confidential document under seal [ECF No. 99] and Plaintiff's motion to file a document under seal [ECF No. 113].  Both sealing motions relate to Dr. Elliott's September 14, 2020 declaration regarding his compensation as an expert in pelvic mesh cases.[6]

---

[6] Dr. Elliott's declaration contains sensitive and confidential financial information.  Upon good cause shown, both motions to seal [ECF Nos. 99, 113] are **GRANTED**.  Under Judge Brooks's Chambers Rules, "Whenever the Court grants a party permission to file an item under seal, a duplicate disclosing all nonconfidential information shall be filed and made part of the public record. The item may be

**D.      Rulings in *Batson* and *Smith***

On July 16, 2020, following transfer of the <u>Batson</u> case from the MDL to the Southern District of Florida, United States Magistrate Judge Dave Lee Brannon issued an order requiring Plaintiff's counsel to work with Dr. Elliott to produce a "verified spreadsheet" to Ethicon with the following information:

> 1) the cases Dr. Elliott testified in concerning pelvic mesh over the last five years; 2) the name of the lawyer or firm that retained Dr. Elliott in this regard; 3) what side Dr. Elliott was testifying on behalf of; 4) how much Dr. Elliott billed for these services; 5) how much he was actually paid for these services; 6) whether the figures are based on memory or documentation.  All documents that exist reflecting this information, except for 1099s, shall be produced along with the spreadsheet.  Other than the spreadsheet, there is no need to create any documents to reflect this information.

(Defs.' Mot. Attach. #10 Benedict Decl. Ex. I [<u>Batson</u> order], at 2, ECF No. 95.)[7]

On October 13, 2020, in a case transferred from the MDL to the District of Oregon, <u>Smith v. Ethicon, Inc., et al.</u>, Case No. 3:20-cv-00851-AC, United States Magistrate Judge John V. Acosta issued an order acknowledging that the MDL court had not issued an order in the <u>Smith</u> action requiring the production of Dr. Elliott's compensation information, but "[d]espite the absence of an MDL Order to enforce, Judge Eifert's rulings in other cases ordering the production of Dr. Elliott's records apply here." (Defs.' Notice Suppl. Auth. Ex. A [<u>Smith</u> order], at 11, ECF No. 107.)  Judge Acosta's

---

redacted to eliminate confidential material from the public document."  The publicly available versions of the declaration are currently redacted in full.  (<u>See</u> Defs.' Reply Attach. #2 Wes Decl. Ex. A, at 2, ECF No. 102; Pl.'s Resp. Defs.' Suppl. Auth. Attach. #3 Ex. 2, at 2, ECF No. 112.)  The only confidential information contained within the declaration, however, are the dollar amounts set forth in paragraphs 7 through 11.  The remainder of the declaration consists of nonconfidential information that has already been disclosed in the public court record through the filing of the present motion.  Therefore, the Court **ORDERS** Plaintiff to file a publicly available document entitled "Redacted Copy of Sealed Declaration of Dr. Daniel Elliott in Opposition to Motion to Enforce MDL Discovery Order" that redacts only the dollar amounts set forth in paragraphs 7 through 11 of the declaration within seven days of the date of this order.

[7] According to Defendants, the <u>Batson</u> case settled on July 27, 2020, prior to the production of the verified spreadsheet and supporting documents.  (Defs.' Mot. 8, ECF No. 95.)

order required Plaintiffs to produce to Defendants essentially the same information required to be produced by the <u>Batson</u> court by November 9, 2020.  (<u>Id.</u> at 20-21.)  Additionally, Judge Acosta permitted Defendants to depose Dr. Elliott for a period of two hours concerning information produced in the verified chart or spreadsheet and supporting documentation and ordered Plaintiffs' counsel to pay the attorney's fees and costs incurred by Defendants in bringing their motion.  (<u>Id.</u> at 21.)[8]

## II.    LEGAL STANDARDS

Under the law of the case doctrine, "a court should not reopen issues decided in earlier stages of the same litigation." <u>Agostini v. Felton</u>, 521 U.S. 203, 236 (1997).  The policies of judicial economy and finality warrant the application of the law of the case doctrine to MDL cases.  <u>Allen v. Am. Capital Ltd.</u>, 287 F. Supp. 3d 763, 776 (D. Ariz. 2017).  "The whole purpose of MDL would be defeated if the trial judge after remand were to revisit the rulings of the MDL judge." <u>White v. Novartis Pharm. Corp.</u>, No. CIV. 2:06–665 WBS GGH, 2010 WL 3448589, at *2 (E.D. Cal. Sept. 1, 2010).

When required disclosures are not made or cooperation breaks down during the discovery process, Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosures or discovery.  <u>Sali v. Corona Reg'l Med. Cent.</u>, 884 F.3d 1218, 1219 (9th Cir. 2018).  If a motion brought pursuant to Rule 37 is granted, or if the disclosure or requested discovery is provided after the motion was filed, the court must "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).  "If the order is disobeyed, the court can impose contempt and other sanctions." <u>Sali</u>, 884 F.3d at 1220; Fed. R. Civ. 37(b).  "The scope of sanctions for failure to comply with a discovery

/ / /

---

[8] Plaintiff contends that Judge Acosta's ruling is "clear error and contrary to the law and is being appealed to the district court."  (Pl.'s Resp. Defs.' Suppl. Auth. 2, ECF No. 112.)

1  order is committed to the sound discretion of the district court."  Payne v. Exxon Corp.,

2  121 F.3d 503, 510 (9th Cir. 1997).

3                                    III.    DISCUSSION

4  A.     **Insufficient Production to Date**

5          Judge Eifert's ruling on Defendants' Motion to Compel Dr. Daniel Elliott to

6  Produce Compensation Records is clear:  Dr. Elliott is required to produce a list of all

7  transvaginal or pelvic mesh cases in the MDL or state court in which he provided an

8  expert report or deposition or trial testimony for the five years preceding the January 14,

9  2020 hearing.  (Defs.' Mot. Attach. #3 [hearing tr. (Jan. 14, 2020)], at 17-18, ECF No.

10 95.)[9]  He is also required to produce documents, such as invoices or payment records,

11 describing the amount of money he made in these cases.  (Id. at 17.)  The records must

12 reflect the name of the case, the lawyer or law firm who retained him, which side retained

13 him, how much he billed, and how much he received.  (Id.)  If these documents no longer

14 exist, Dr. Elliott is required to provide the total amount he has earned in transvaginal or

15 pelvic mesh cases.  (Id. at 18-19.)  Judge Eifert clearly envisioned that the compensation

16 information provided would be based upon "true and correct figures" but left it to counsel

17 to work out the details.  (Id. at 20-21.)

18         Dr. Elliott, through Plaintiff, has provided three documents to Defendants in

19 response to Judge Eifert's order:  (1) his September 14, 2020 declaration concerning his

20 compensation as an expert in pelvic mesh cases, (see ECF No. 100 [sealed]); (2) a

21 "Notice of Prior Testimony" setting forth a list of thirty-seven cases in which he testified

22

23 _____

24 [9] One of the requests for production upon which Defendants' Motion to Compel was based, Document

25 Request No. 33, sought documents for the past five years.  (Defs.' Mot. Attach. #8 Defs.' Mot. Compel, ex. A [Elliott dep. notice], at 15, ECF No. 95.)  Although Judge Eifert referred to the case list and

26 documents being provided for the preceding four years, (see id. Attach. #3 [hearing tr. (Jan. 14, 2020)], at 17), she granted Defendants' motion to compel, which sought compensation information for the past

27 five years.  (See id. Attach. #8 Defs.' Mot. Compel, at 1; id. Attach. #2 [Jan. 15, 2020 Order], at 2.)  The Court interprets the MDL order as requiring production for the five years preceding the January 14,

28 2020 hearing.

as an expert witness in the past four years, (see Defs.' Reply Attach. #3 Notice Prior Test., at 2-5, ECF No. 102); and (3) an untitled document described by Plaintiff as a "spreadsheet identifying the case name, number and location for every deposition or trial testimony in the previous five years, including the name(s) of the law firm(s) that retained [Dr. Elliot] for that case," containing forty-seven cases, (see Pl.'s Resp. Defs.' Suppl. Auth. Attach. #5 [spreadsheet], at 2-4, ECF No. 112).[10]  The information provided thus far is deficient for several reasons.

First, Judge Eifert's order requires Dr. Elliott to provide a list of cases in which he provided deposition or trial testimony <u>or</u> an expert report.  The lists provided by Plaintiff appear to only include cases in which Dr. Elliott provided testimony.  This does not comply with Judge Eifert's order.

Second, the method employed by Plaintiff and Dr. Elliott to identify cases in which Dr. Elliott provided testimony or an expert report is woefully inadequate.  Plaintiff and Dr. Elliott have provided the names of forty-eight cases to date.  Defendants have identified 119 cases against Ethicon in which Dr. Elliott was designated as an expert in the past five years.  (Defs.' Reply Attach. #4 Wes Decl. Ex. C [Ethicon case list], at 2-6, ECF No. 102).  Although Defendants' list of cases may be over-inclusive, in that it may include cases in which Dr. Elliott was designated as an expert but did not produce an expert report, Defendants' list contains cases in which Dr. Elliott provided deposition or

---

[10]     The Notice of Prior Testimony and the spreadsheet are largely duplicative.  The spreadsheet, which is untitled and unverified, covers the past five years and lists forty-seven cases, including thirty-six of the thirty-seven cases listed in the Notice of Prior Testimony (<u>Jones v. Ethicon, Inc.</u>, Case No. 2:12-cv-09517, appears in the Notice but is missing from the spreadsheet).  The spreadsheet also includes eleven cases from 2015 (i.e., five years ago) that were not included on the Notice of Prior Testimony, which covered only the past four years.  These eleven cases include the cases against Bard and Cook Medical that Defendants observed were missing from the Notice of Prior Testimony, (see Defs.' Reply 6, ECF No. 102), so this discrepancy has now been addressed.

Between the Notice of Prior Testimony and the spreadsheet, a total of forty-eight cases have been identified (i.e., all of the cases on the spreadsheet plus the missing <u>Jones</u> matter).  Going forward, any updates to Dr. Elliott's case list or compensation information shall be reflected in one single verified document.

1    trial testimony that are not, but should have been, on Plaintiff's lists, including the

2    <u>Bellew</u>, <u>Beltz</u>, <u>Brooks</u>, <u>Emmet</u>, <u>Mullins</u>, <u>Schnering</u>, and <u>Sandra Wolfe</u> cases.  (<u>See id.</u>)

3    These discrepancies highlight the inadequacy of the search protocol employed by

4    Plaintiff and Dr. Elliott, in which Plaintiff's counsel requested a list of depositions given

5    by Dr. Elliott from the court reporting service used in the MDL pelvic mesh cases,

6    Golkow Court Reporting Services.  (Elliott Decl. 3-4, ECF No. 100 [sealed].)[11]  As will

7    be discussed further below, there are clearly other means by which to obtain a much more

8    accurate list of cases in which Dr. Elliott provided expert services.

9         Third, neither of the lists provided by Plaintiff and Dr. Elliott include any

10   information concerning which side retained Dr. Elliott, how much he billed, and how

11   much he received, and the Notice of Prior Testimony does not include the names of the

12   lawyer or law firm who retained him.[12]  Instead of providing compensation information

13   for each case in which he prepared an expert report or testified, Dr. Elliott provided a

14   declaration estimating the total compensation he has received.  (<u>Id.</u> at 2-6.)  He did this

15   by calculating the average fee he was paid by Plaintiff's counsel's firm (the Doyle

16   Lowther firm) in seven cases in which he prepared an expert report and provided

17   deposition testimony, and then multiplying the average fee by forty-six (of the total of

18   forty-eight) cases he identified on his case list.  (<u>Id.</u> at 4-5.)  For the two (of the total of

19   forty-eight) cases in which he had provided trial testimony, he provided an estimated total

20   of the amount he was paid.  (<u>Id.</u> at 5.)  He also estimated that in ten percent of cases, he

21   had prepared an expert report but was not deposed, and then multiplied the average fee he

22   charged Plaintiff's counsel's firm in such cases by five (i.e., approximately ten percent of

23   the total of forty-eight cases identified).  (<u>Id.</u> at 4.)  He then added these three amounts

24

25   [11] Although Dr. Elliott states that Plaintiff's counsel also "undertook other efforts to identify cases where
     I've given deposition [testimony] through [online] searches of dockets" and "contacted certain law firms
26   . . . to determine whether the Golkow list was accurate or whether additional cases should be added to
     the list," Plaintiff's counsel has not provided a declaration or any further details regarding these efforts.
27   [12] The spreadsheet provided by Plaintiff does contain the names of the lawyer or law firm who retained
28   Dr. Elliott.  (<u>See</u> Pl.'s Resp. Defs.' Suppl. Auth. Attach. #5 [spreadsheet], at 2-4, ECF No. 112.)

together to calculate his total estimated expert compensation.  (Id. at 5.)  Dr. Elliott's method for calculating his estimated compensation is very imprecise and likely has not yielded the "true and correct figures" that the doctor is required to produce.

**B.    Diligent Search of Records Required**

An expert witness is required, in all cases, to disclose a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition, and the compensation received for expert services provided in the case at issue.  Fed. R. Civ. P. 26(a)(2)(B).  In certain cases, courts have also required the disclosure of, or testimony relating to, information relating to an expert's compensation for services rendered in other cases, including the percentage of income earned for providing expert witness services, lists of cases in which the witness served as an expert, and the names of companies for whom the expert has provided expert witness services. See, e.g., Behler v. Hanlon, 199 F.R.D. 553, 561-63 (D. Md. 2001); Silgan Containers v. Nat'l Union Fire Ins., No. C 09-05971 RS (LB), 2011 WL 1058861, at *6-7 (N.D. Cal. Mar. 23, 2011).

The Ethicon MDL court issued orders in multiple cases requiring the expert witnesses to produce information concerning their compensation for providing expert witness services in other pelvic mesh cases, including in the Parks case.  This is not Dr. Elliott's first rodeo.  A retained expert understands that compensation paid on prior matters is evidence that will inevitably be sought in subsequent matters.  Dr. Elliott cannot avoid the obligation to provide information regarding his compensation on the basis that he discards his invoices for services and does not maintain records relating to his expert services.  Having discarded his invoices and records, the onus is now on him to search for the information needed to adequately comply with the court's order.  He is the only person with readily available access to this information and Judge Eifert's order requires him, at the very minimum, to provide a complete list of pelvic mesh cases, based upon a diligent search of records in his possession, custody, or control, in which he

/ / /

provided an expert report or expert testimony. Cavalier recordkeeping does not absolve him from the obligation to respond to a discovery order.

Dr. Elliott has testified that he turned over his 1099 forms and tax records to his accountants.[13] Given Dr. Elliott's testimony that he does not keep any invoices for his expert services once the invoices are paid, these records are the best source of identifying the law firms that retained Dr. Elliott as well as the <u>actual</u> compensation he earned for his expert services. His declaration contains no indication that he consulted with his accountants to determine the availability of these documents (which are almost certainly required be retained for tax audit purposes) or that he searched his own tax records to see if he could locate any 1099 forms or other relevant documents. In addition, Dr. Elliott should contact all law firms who retained him as an expert to obtain copies of his invoices, or at the very least, the names of the cases, and the case styles, in which he participated as an expert, the details of his services rendered (i.e., whether he provided an expert report, expert testimony, or both), and the amounts he billed and received for each case in which he provided a report or testimony.[14] This effort should yield an additional number of cases to add to Dr. Elliott's list. Other potential sources of additional case names are Dr. Elliott's computer and paper files, where he presumably saved copies of at least some of the reports he prepared. He should also review the list of Ethicon cases provided by Defendants to ensure that his list contains all responsive case information. In short, the Court expects all reasonable methods to be employed by Dr. Elliott to

---

[13] In his deposition in the <u>Batson</u> case, Dr. Elliott testified that he has used four or five different accounting firms in the last seven or eight years. (Defs.' Mot. Attach. #7 Benedict Decl. Ex. F [<u>Batson</u> dep.], at 24, ECF No. 95.)

[14] At the hearing in the <u>Carbon</u>, <u>Burris</u>, and <u>Mallow</u> cases, Judge Eifert commented, "Somebody should have [the experts' 1099 forms] I would think because . . . any one of these experts could be audited by the IRS. And, so, I would think they would have kept their financial information. So I'd be really skeptical to find out that somebody is saying they don't have this relevant information." (Defs.' Mot. Attach. #5 Benedict Decl. Ex. D [hearing tr. (Nov. 7, 2019)], at 14-15, ECF No. 95.) She also observed that the experts "can always get copies" from the law firms that retained them. (<u>Id.</u> at 15.) The Court shares this view.

20cv0989-TWR(RBB)

provide a full and accurate list of cases responsive to Judge Eifert's order.  As Judge

Acosta stated in the Smith matter:

> Regardless whether Dr. Elliott continues to possess the underlying invoices, the information relating to how much he billed and how much he was paid exists in some form.  Dr. Elliott most certainly provided the law firm or firms the invoices requesting payments for his services, and records of payments made in response to those invoices must exist or reside with individuals or entities within the Plaintiffs 'control.  For example, Dr. Elliott testified that he provided financial information to his accountants concerning how much he was paid; those accountants are Dr. Elliott's agents and, in turn, Dr. Elliott is Plaintiffs' agent.  In short, the information sought by Defendants exists in some form – by attorney or accountant, hard form or electronic – and must be produced.

(Defs.' Notice Suppl. Auth. Ex. A [Smith order], at 17-18, ECF No. 107.)

In summary, in the absence of Dr. Elliott's invoices or other records regarding his

compensation for expert services rendered in pelvic mesh cases, 1099s and tax and other

records are the best source of Dr. Elliott's actual compensation information, and Plaintiff

and Dr. Elliott must endeavor to obtain these documents from the doctor's tax records or,

if he does not have the records, from his accountants or the law firms that retained him.

Judge Eifert found that Dr. Elliott is not required to produce the 1099s and that he did not

need to recreate documents that no longer exist, but she clearly contemplated that the

amount of Dr. Elliott's expert compensation should be based upon 1099s or other tax

documents and that he might have to seek copies of these records from his accountants or

the law firms that hired him.  (Defs.' Mot. Attach. #5 Benedict Decl. Ex. D

[Carbon/Burris/Mallow hearing tr. (Nov. 7, 2019)], at 14-15, ECF No. 95.)  In order to

comply with Judge Eifert's order, Plaintiff and Dr. Elliott must conduct a diligent search

and make a reasonable effort to identify not only all cases in which Dr. Elliott provided

deposition or trial testimony, but also each case in which Dr. Elliott prepared an expert

report.

After conducting a diligent search of records, Dr. Elliott is required to produce a

revised, verified case list consisting of all transvaginal or pelvic mesh cases, in the MDL

or state court, in which he provided an expert report or deposition or trial testimony for the five years preceding the January 14, 2020 hearing before Judge Eifert.  The case list must include the case style, the lawyer or law firm who retained him, which side retained him, how much he billed, and how much he received.  He is also required to produce documents, such as invoices or payment records, reflecting this information.  If these documents no longer exist, or if Dr. Elliott is unable to determine the amount he billed and received in each individual case, Dr. Elliott is required to provide the total amount he has earned in transvaginal or pelvic mesh cases based on true and correct figures.

Defendants may, as requested, take a two-hour deposition of Dr. Elliott regarding his compensation records.  See, e.g., Behler, 199 F.R.D. at 562 (permitting expert deposition requiring expert's compensation information).  The Court declines, however, to require Plaintiff's counsel to pay for Dr. Elliott's time for providing deposition testimony.  If Defendants elect to proceed with Dr. Elliott's deposition, they must bear all customary costs and fees associated with the deposition.

**C.**   **Production in this Case Only**

Although Defendants claim that the "general practice" in the MDL was that Judge Eifert's ruling on a discovery issue in one case applied to the same issue in all other cases in the MDL, (see Defs.' Mot. 4, ECF No. 95), they provide no citations to the record confirming this.[15]  Defendants' position is contradicted by Judge Eifert's  separate consideration of, and multiple rulings on, the expert compensation issue in the Parks/Batson/Westerfield cases, the Carbon/Burris/Mallow cases, and the Ferrer case.  Moreover, this Court only has jurisdiction over this case, and not the other cases remanded by the MDL court.  Therefore, this order requires the production of Dr. Elliott's compensation information in this case only.

---

[15] At the hearing in the Carbon, Burris, and Mallow cases, Judge Eifert indicated that expert compensation was relevant in all of the pelvic mesh cases, but she did not state that her ruling applied to all the cases pending before her.  (Defs.' Mot. Attach. #5 Benedict Decl. Ex. D [hearing tr. (Nov. 7, 2019)], at 12, ECF No. 95.)

1

**D.      Sanctions Under Rule 37**

2          Monetary sanctions are authorized under Rule 37(a) of the Federal Rules of Civil

3   Procedure.  If the court grants a motion brought pursuant to Rule 37, or if the disclosure

4   or requested discovery is provided after the motion was filed, "the court must, after

5   giving an opportunity to be heard, require the party or deponent whose conduct

6   necessitated the motion, the party or attorney advising that conduct, or both to pay the

7   movant's reasonable expenses incurred in making the motion, including attorney's fees."

8   Fed. R. Civ. P. 37(a)(5)(A).  The award is mandatory unless the court finds that the

9   opposing party's position was "substantially justified" or that "other circumstances make

10  an award of expenses unjust."  Id.  Here, the failure of Plaintiff and Dr. Elliott to timely

11  and fully comply with Judge Eifert's order requiring Dr. Elliott to produce compensation

12  information necessitated the filing of the current motion.  Although Judge Eifert issued

13  her order on January 14, 2020, and required production of Dr. Elliott's compensation

14  information within forty-five days, Plaintiff and Dr. Elliott did not produce any

15  compensation information until eight months later on September 14, 2020, the day

16  Plaintiff's opposition to the present motion was due.  And once compensation

17  information was finally produced, it was deficient, requiring Defendants to incur

18  additional expenses.  Having fully considered the record before it, the Court finds that

19  Plaintiff's counsel "advised the conduct" necessitating the filing of the current motion.

20  See id.  Plaintiff's counsel advised Dr. Elliott not to answer Defendants' counsel's

21  question concerning compensation earned in the pelvic mesh litigation, instituted the

22  ineffectual search protocol used to create Dr. Elliott's list of cases, and failed to employ

23  reasonable and diligent efforts to comply with Judge Eifert's order.  The record also

24  shows that Plaintiff and Dr. Elliott's nonproduction and then deficient production of the

25  compensation information was not substantially justified, and there are no other

26  circumstances making an award of expenses unjust.  Accordingly, sanctions under Rule

27  37(a) against Plaintiff's counsel are warranted.

28

20cv0989-TWR(RBB)

Monetary sanctions are also authorized under Rule 37(b).  This rule confers broad authority to impose sanctions as a remedy for noncompliance with discovery orders.  See Roadway Express, Inc. v. Piper, 447 U.S. 752, 763 (1980).  The term "order" is read broadly in this context to "include any order relating to discovery."  Sali, 884 F.3d at 1222.  The sanctions available under this provision includes the payment of reasonable expenses, including attorney's fees.  Fed. R. Civ. P. 37(b)(2)(C).

Defendants' request for attorney's fees incurred in bringing this motion is **GRANTED**.  Defendants are to provide to Plaintiff's counsel an invoice detailing the reasonable expenses incurred, including attorney's fees, in filing this motion.  The Court expects Defendants to apportion their expenses so that only those incurred in the filing of the motion in this case are attributed to Plaintiff's counsel.  Plaintiff's counsel shall pay the reasonable expenses within fourteen days of receipt of Defendants' invoice.

## IV.   CONCLUSION

For the reasons discussed above, Defendants' Motion to Enforce MDL Discovery Order Regarding Compensation of Dr. Daniel Elliott is **GRANTED IN PART and DENIED IN PART** as follows:

1.      Defendants' request that the Court order the immediate production of Dr. Elliott's compensation records as previously ordered in the MDL is **GRANTED**.  After conducting a diligent search of records, as described more thoroughly above, Dr. Elliott is required, within thirty days of the date of this order, to produce a revised, verified case list consisting of all transvaginal or pelvic mesh cases, in the MDL or state court, in which he provided an expert report or deposition or trial testimony for the five years preceding the January 14, 2020 hearing before Judge Eifert.  The case list must include the case style, the lawyer or law firm who retained him, which side retained him, how much he billed, and how much he received.  He is also required to produce documents, such as invoices or payment records, reflecting this information.  If these documents no longer exist, or if Dr. Elliott is unable to determine the amount he billed and received in each individual case, Dr. Elliott is required to provide the total amount he has earned in

transvaginal or pelvic mesh cases based on true and correct figures as obtained through the search method required by this order.

2.     Defendants' request for a two-hour deposition of Dr. Elliott regarding his compensation records, including efforts undertaken by him and others to obtain the records and information, is **GRANTED**.

3.     Defendant's request for an order requiring Plaintiff's counsel to pay for Dr. Elliott's time for a compensation deposition is **DENIED**.

4.     Defendants' request for attorney's fees for having to enforce the MDL order is **GRANTED**.

5.     Defendants' request for an order striking Dr. Elliott as an expert in this case if he fails to produce the records and granting any other relief deemed appropriate by the Court is **DENIED** without prejudice to renewing this request if Plaintiff and Dr. Elliott fail to comply with this Order.

6.     Defendants' motion for leave to conditionally file a confidential document under seal [ECF No. 99] and Plaintiff's motion to file a document under seal [ECF No. 113] are **GRANTED**.

7.     Plaintiff is **ORDERED** to file a publicly available document entitled "Redacted Copy of Sealed Declaration of Dr. Daniel Elliott in Opposition to Motion to Enforce MDL Discovery Order" that redacts only the dollar amounts set forth in paragraphs 7 through 11 of Dr. Elliott's Declaration, filed under seal, within seven days of the date of this order.

    **IT IS SO ORDERED**.

Dated:  November 18, 2020

Hon. Ruben B. Brooks
United States Magistrate Judge

20cv0989-TWR(RBB)