Chris W. Cantrell (SBN 290874)
**DOYLE APC**
550 West B Street, Fourth Floor
San Diego, CA 92101
(619) 736-0000 phone
(619) 736-1111 fax

William J. Doyle (SBN 188069)
John Lowther (SBN 207000)
**DOYLE LOWTHER LLP**
4400 NE 77th Avenue, Suite 275
Vancouver WA 98662
(360) 818-9320 phone
(360) 450-3116 fax

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA PARKS,<br><br>                              Plaintiff,<br><br>v.<br><br>ETHICON, INC., ET AL.,<br><br>                         Defendants. | Case No.: 3:20-cv-00989-LL-RBB<br><br>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR A SEPARATE TRIAL ON STATUTE OF LIMITATIONS (BIFURCATION)<br><br>Per L.R. 7.1(d)(1) No Oral Argument |

# **<u>TABLE OF CONTENTS</u>**

I.   INTRODUCTION ……………………………………………………… 1

II.   STANDARD …………………………………….……..……………... 2

III.   ARGUMENT…………………………………………………… 3

    A.  Bifurcation Will Not Facilitate Judicial Economy or Efficiency  …… 3

    B.  Defendants' Statute of Limitations Argument Lacks Evidentiary
       Support … ……………………………………………………... 7

    C.  Bifurcation Will Prejudice Mrs. Parks ……………………………... 11

    D. Defendants Will Suffer No Prejudice From A Single Trial ………... 14

    E.  Defendants Fail to Show Bifurcation Will Lead to More Accurate
       Outcomes ……………………………………………………… 17

    F.  Separate Trials Would Violate Plaintiff's Seventh Amendment
       Rights ………………………………………………………  18

IV.   CONCLUSION …………………………………………………  18

1

# **TABLE OF AUTHORITIES**

2

**Cases**

3

*Acosta v. Ethicon, Inc.*, 2021 WL 6104868 (C.D. Cal. Dec. 13, 2021) . . . . . . . .  passim

4

*Arthur Young & Co. v. United States Dist. Ct.*, 549 F.2d 686 (9th Cir. 1977) . . . 18

5

6

*Calmar, Inc. v. Emson Research, Inc.*, 850 F. Supp. 861 (C.D. Cal. 1994) . . . . . . . . . passim

7

*Davis v. Johnson & Johnson*, 2022 WL 2116337 (D. Kan. June 13, 2022) . . . . . . passim

8

*Dodgeland of Columbia, Inc. v. Federated Mut. Ins. Co.*, 2009 WL 10710815
(D.S.C. July 15, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 14, 16

9

10

11

*Enborg v. Ethicon, Inc.*, 2022 WL 1122618 (E.D. Cal. Apr. 14, 2022) . . . . . . . . . passim

12

*Energy Intelligence Group, Inc. v. Plains All Am. Pipeline*, 2012 WL 12893992
(C.D. Cal. July 30, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

13

14

*Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016) . . . . . . . . . . . . . 3

15

*Farghaly v. Potamkin Cadillac-Buick-Chevrolet-Geo, Ltd.*, 2021 WL 4267656
(S.D.N.Y. Sept. 20, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

16

17

*Fox v. Ethicon-Endo Surgery, Inc.* (2005) 35 Cal. 4th 797 . . . . . . . . . . . . . . . . . 8

18

*Gencarelli v. Twentieth Century Fox Film Corp.*, 2018 WL 376664
(C.D. Cal. Jan. 11, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

19

20

*Heatherman*, 2021 WL 2138543 (D. Colo. Jan. 22, 2021) . . . . . . . . . . . . . . . . . passim

21

22

*Heinrich v. Ethicon, Inc.*, 2021 WL 2801961 (D. Nev. Apr. 15, 2021) . . . . . . . . 6, 16

23

*In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444 (3d Cir. 1997) . . . . . . . . . . . . . 17

24

*Jolly v. Eli Lilly & Co.* (1988) 44 Cal. 3d 1103 . . . . . . . . . . . . . . . . . . . . . . . passim

25

26

*Mason v. Ethicon, Inc.*, 2021 WL 2580113 (M.D. Fla. May 10, 2021) . . . . . . . . 5, 12

27

*McBroom v. Ethicon, Inc.*, 2021 WL 2661463 (D. Ariz. June 29, 2021) . . . . . . . . 5

28

*Natural-Immunogenics v. Newport Trial Grp*, 2018 WL 6136784
(C.D. Cal. Apr. 17, 2018) ............................................................. 15

*Parks v. Ethicon, Inc.*, 2020 WL 6118774 (S.D. Cal. Oct. 16, 2020) ............ 6

*Platt Elec. Suppy, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049 (9th Cir. 2008) ....... 8, 9

*PSM Hldg. Corp. v. National Farm Fin. Corp.*, 884 F.3d 812 (9th Cir. 2018) ..... 17

*Silverwing at Sandpoint, LLC v. Bonner County*, 2014 WL 6629600
(D. Idaho Nov. 21, 2014) ............................................................ 18

*Slovensky v. Friedman* (2006) 142 Cal. App. 4th 1518 ........................... 8

*Snyder v. Bank of Am., N.A.*, 2020 WL 6462400 (N.D. Cal. Nov. 3, 2020) .... 12

*Soto v. Sweetman*, 882 F.3d 865 (9th Cir. 2018) ................................. 9

*Thornton v. Ethicon, Inc.*, 2021 WL 5578931 (D. Ariz. Nov. 29, 2021) ........ passim

*United Air Lines, Inc. v. Wiener*, 286 F.2d 302 (9th Cir. 1961) ................. 18

*United States v. 1,071.08 Acres*, 564 F.2d 1350 (9th Cir. 1977) ............... 16

*Wesco Ins. Co. v. Tauler Smith LLP*, 2020 WL 4369496 (C.D. Cal.
Mar. 10, 2020) ................................................................ 3, 16, 18

*Westerfield v. Ethicon, Inc.*, 2:20-cv-04803-GW, Dkt. No. 160 at 1
(C.D. Cal. Nov. 11, 2021) ....................................................... passim

*Young v. Mentor Worldwide LLC,* 312 F. Supp. 3d 765 (E.D. Ark. 2018) ........ 6

*Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ....... 3, 4

**Statutes/Rules**

*Fed. R. Civ. P.* 42(b) ...................................................... 2, 3, 7, 18

Cal. Civ. Proc. Code § 335.1 ...................................................... 6, 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Cal. Bus. & Prof. Code § 17208 …………………………………………..… 6, 10

Cal. Civ. § 1783 ……………………………………………………..… 6, 10

Cal. Civ. Proc. Code § 338(d) …………………………………………..… 6, 10

iv
TABLE OF AUTHORITIES

## I.    INTRODUCTION

Mrs. Donna Parks' case has been pending for more than nine years. *See* ECF No. 205 at 5 n. 1. For seven years, Plaintiff waited for her case to wend its way through the MDL process and be transferred to this district for trial, only to have her day in court delayed another two years due in large part to the Covid-19 pandemic. Defendants now seek to delay further Mrs. Parks' day in court by moving to bifurcate this case into two phases, with different juries: (1) a separate trial on the statute of limitations; and (2) months later, a full trial on the merits of the case. ECF No. 205 at 4. Bifurcating this matter into a statute of limitations phase and a second full merits phase, would not advance judicial economy or efficiency because *See* Defendants' statute of limitations argument, even if successful, would not be dispositive of the entire case. Plaintiff's claims with three- and four-year statute of limitations are not subject to Defendants' statute of limitations argument. Under these circumstances, bifurcating this matter would serve no purpose other than to significantly prejudice Plaintiff and further strain the resources of a federal judiciary already taxed to the limit due to the impact of Covid. The Motion should be denied.

Only now, after nine-years of litigation and as the case nears trial, do Defendants request bifurcation and a separate mini-trial on the statute of limitations. Putting aside the legal and factual infirmity of the Defendants' Motion, the dilatory nature of the Motion warrants its denial. Not only did Defendants wait nine-years before requesting bifurcation, Defendants never apprised the Court or Plaintiff's counsel, of any intent to seek bifurcation until now. Bifurcation was not raised in Defendants' summary judgment motion,[1] *see* ECF Nos. 34, 35, or any of the numerous other submissions made to this

---

[1] Not only did the summary judgment motion not raise the bifurcation issue, with the exception of Plaintiff's Express (Count ) and Implied Warranty (Count ) claims which have unique statute of limitations that accrue on the date tender of delivery of goods is made, the Defendants never asserted any other claims were time-barred. *See* ECF Nos. 34, 35.

1    Court over the past two years. Nor did Defendants request leave of the court to file the

2    instant motion. Defendants should not be rewarded for these dilatory tactics. That

3    Defendants' summary judgment raised this statute of limitations argument underscores

4    the weakness of this defense and the dubious timing of the motion.

5        Defendants have recently filed this same bifurcation motion in at least ten other

6    transvaginal mesh cases transferred out of the MDL for trial. This type of shotgun motion

7    practice indicates some litigation-wide strategy, not the judicious use of motion practice

8    based on the specific facts of each case. Like the majority of other district courts

9    considering this motion, this Court should deny Defendants' Motion.

10   **II.    STANDARD**

11       Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid

12   prejudice, or to expedite and economize, the Court may order a separate trial of one or

13   more separate issues, claims, cross-claims, counterclaims, or third party claims." Fed. R.

14   Civ. P. 42(b). But "piecemeal trial of separate issues in a single suit is not to be the usual

15   course [and] should be resorted to only in the exercise of informed discretion when the

16   court believes that separation will achieve the purposes of the rule." *Zivkovic v. Southern*

17   *Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). Bifurcation "is not to be routinely

18   ordered." *Enborg v. Ethicon, Inc.,* 2022 WL 1122618, at *2 (E.D. Cal. Apr. 14, 2022).

19       Motions to bifurcate are granted "on a case by case basis only when the separation

20   will result in judicial economy and will not unduly prejudice any party." *Calmar, Inc. v.*

21   *Emson Research, Inc.*, 850 F. Supp. 861, 865 (C.D. Cal. 1994). Relevant factors when "ruling

22   on a Rule 42(b) motion include complexity of issues, factual proof, risk of jury confusion,

23   difference between separated issues, the chance that separation will lead to economy in

24   discovery, and the possibility that the first trial may be dispositive." *Energy Intelligence*

25   *Group, Inc. v. Plains All Am. Pipeline*, 2012 WL 12893992, at *1 (C.D. Cal. July 30, 2012);

26   *accord Calmar*, 850 F. Supp. at 866. As movants, Defendants bear the "burden to

27   demonstrate that judicial economy would be promoted and that the non-moving party

28

will not suffer prejudice." *Wesco Ins. Co. v. Tauler Smith LLP*, 2020 WL 4369496, at *1 (C.D. Cal. Mar. 10, 2020); *accord Energy Intelligence*, 2012 WL 12893992, at *1.

## III.   ARGUMENT

### A.   Bifurcation Will Not Facilitate Judicial Economy or Efficiency

Bifurcating a trial on separate issues may be appropriate if it serves to "expedite or economize" the proceedings. *Fed. R. Civ. P.* 42(b). Typically, this occurs when bifurcation will allow the court "to avoid a difficult question by first dealing with an easier, dispositive issue, or to avoid the risk of prejudice." *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016); *see Zivkovic*, 302 F.3d at 1088 (bifurcation can "defer[] costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues"). Here, however, Defendants' statute-of-limitations defense, even if successful on some claims, would not be dispositive of this matter.

The defense's limitations argument, even if factually accurate, which it isn't, only encompasses those claims with a two-year statute of limitations. *See* ECF No. 205 at 4-5 & n. 1. The date of "filing," concedes Defendants, is July 12, *2013*. ECF No. 205 at 5 n. 1 (emphasis added). And the alleged "dispositive question" for the jury in a trial based only on the statute of limitation is: "did Plaintiff's claims accrue before July 12, *2011*?" ECF No. 205 at 4 (emphasis added). This two year-period is applicable only Plaintiff's claims for negligence, strict liability based on failure to warn, and negligent misrepresentation. Cal. Civ. Proc. Code § 335.1. But other claims survived summary judgment, including claims for fraud, fraudulent concealment, and violations of the Consumer Legal Remedies Act, which are subject to a three-year statute of limitations, and claims under the Unfair Competition Law, which have a four-year statute of limitation. *Parks v. Ethicon, Inc.*, 2020 WL 6118774 (S.D. Cal. Oct. 16, 2020); *see also* Cal. Bus. & Prof. Code § 17208 (UCL); Cal. Civ. § 1783 (CLRA); Cal. Civ. Proc. Code § 338(d) (fraud). Under the trial plan Defendants themselves propose, neither the fraud nor the

1  consumer protection causes of action would be addressed by the jury in first trial. ECF
2  No. 205 at 4.

3       Defendants concede their statute-of-limitations defense applies only to claims with
4  a two-year statute of limitations (ECF No. 205 at 4-5 & n. 1), ensuring there will be a
5  larger trial on the merits regardless of the outcome of any bifurcated statute of limitations
6  trial. "[P]iecemeal trial of separate issues in a single suit is not to be the usual course [and]
7  should be resorted to only in the exercise of informed discretion when the court believes
8  that separation will achieve the purposes of the rule." *Zivkovic*, 302 F.3d at 1088. No
9  judicial economy would be served by bifurcating the trial of this matter, for "any first trial
10 on the statute of limitations issue alone would not lead to any efficiency or economization
11 gains." ECF No. 205-9 at 4. Even removing the fraud-based and consumer protection
12 claims from consideration, bifurcation still would not advance judicial economy. Under
13 California law "the statute of limitations begins to run when the plaintiff suspects or
14 should suspect that her injury ***was caused by wrongdoing***, that someone has done
15 something ***wrong*** to her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109-10 (1988)
16 (emphasis added). Thus, "there will be significant overlap in evidence between the two
17 proposed trials, given that the statute of limitations defense is premised on the idea that
18 Plaintiff[] should have been aware of [Gynecare's] possible defectiveness sooner." *Acosta
19 v. Ethicon, Inc.*, 2021 WL 6104868, at *1 (C.D. Cal. Dec. 13, 2021) (denying motion to
20 bifurcate).

21      The majority of courts, including California district courts, that have considered
22 this same bifurcation argument have denied the motion. *See, e.g.*, *Enborg*, 2022 WL
23 1122618, at *1; *Acosta*, 2021 WL 6104868, at *1; ECF No. 205-9 at 2. In *Davis v. Johnson
24 & Johnson*, for example, the court denied Defendants' motion because any judicial
25 economy from bifurcation was speculative and required the court to "assume[] that
26 Defendants' statute of limitations defense will be successful" because if Defendants did
27 not prevail, "the demands and costs of trial on the parties, at least some witnesses, the

28

Court, and the jury pool would be doubled." *Davis*, 2022 WL 2116337, at *1 (D. Kan. June 13, 2022). In *Mason v. Ethicon, Inc.*, the district court likewise found any judicial economy from bifurcation speculative because it "assumes Defendants prevail on the statute of limitations issue"; whereas, if the "Plaintiff prevails, a separate trial will not save time. Just the opposite." *Mason*, 2021 WL 2580113, at *1 (M.D. Fla. May 10, 2021); *see also Thornton v. Ethicon, Inc.*, 2021 WL 5578931, at *3-4 & n. 5 (D. Ariz. Nov. 29, 2021) (finding denying Ethicon's bifurcation motion and finding any judicial economy or efficiency speculative because it requires Ethicon to prevail in the statute of limitations trial and Ethicon has not prevailed in any bifurcated statute of limitations trial to date.)

In denying Ethicon's bifurcation motion, the district court in *Heatherman v. Ethicon, Inc.*, observed "the evidence concerning the limitations defense is not as distinct and 'separable' from the merits evidence as defendants envision." *Heatherman*, 2021 WL 2138543, at *2 (D. Colo. Jan. 22, 2021). The district court found that bifurcation "would not promote economy or expedition" because the court did "not view the limitations issue as a slam dunk for defendants" making two trials a possibility. *Id.* Nor was the court "convinced that trying the merits and defendant's affirmative defense in one trial would unfairly prejudice the defendants." *Id.* In *Enborg v. Ethicon, Inc.*, the district court denied Ethicon's motion because judicial economy would not be served because any bifurcated trial on the statute of limitations issue would be more complex and lengthier than Ethicon acknowledged and involved substantial overlap in evidence with any merits trial. *Enborg*, 2022 WL 1122618, at *3-4. The courts in *Acosta* and *Westerfield v. Ethicon, Inc.*, two decisions from the Central District of California, arrived at similar conclusions. *See Acosta*, 2021 WL 6104868, at *1; *Westerfield v. Ethicon, Inc.*, 2:20-cv-04803-GW, Dkt. No. 160 at 1 (C.D. Cal. Nov. 11, 2021), *found at* ECF No. 205-9 at 2-3.

In those few instances where bifurcation has been granted, the statute of limitations issue was potentially dispositive of the entire matter. *See McBroom v. Ethicon, Inc.*, 2021 WL 2661463, at *2 (D. Ariz. June 29, 2021) (finding bifurcation appropriate

because if defendants prevailed on their statute of limitations defense it "would obviate the need for a weeks-long trial on the merits of Plaintiff's claims."); *Heinrich v. Ethicon, Inc.*, 2021 WL 2801961, at *1 (D. Nev. Apr. 15, 2021) (also finding bifurcation appropriate because "a favorable decision on the limitation period will obviate the need for a weeks-long trial on the merits."); *Gardner v. Ethicon, Inc.*, ECF No. 205-4 at 5 ("if the jury decides the statute of limitations applies in a bifurcated trial, we are here probably three days, at best."); *Young v. Mentor Worldwide LLC,* 312 F. Supp. 3d 765, 768 (E.D. Ark. 2018) (allowing bifurcation because "the statute of limitations defense is potentially dispositive and a preliminary trial won't consume the time and expense necessary for a trial on the merits."). Even that benefit, as speculative as it may be, does not exist in the instant matter. In the lone California case Defendants cite, *Crissman v. Ethicon, Inc.*, the plaintiffs "did not file an opposition" to the bifurcation motion, and nothing in the cursory order indicates that a larger trial on the merits, regardless of the outcome on limitations, would occur, as is the case here. ECF No. 205-2 at 2-3.

Here, bifurcation would only serve to waste precious judicial resources by empaneling two separate juries to hear two separate trials that involve significant overlapping testimony, at a time when the judiciary's resources are already stretched thin due to the Covid pandemic. *See* ECF No. 205-9 at 2-3; *Farghaly v. Potamkin Cadillac-Buick-Chevrolet-Geo, Ltd.*, 2021 WL 4267656, at *1 (S.D.N.Y. Sept. 20, 2021) ("[B]ifurcation would not save significant court resources but instead could prolong the trial even as the Court faces limited time and space to hold safe trials amid the COVID-19 pandemic."). In *Westerfield v. Ethicon, Inc.*, Judge Wu of the Central District of California found the havoc the Covid pandemic has wrought on the federal judiciary's trial calendar a sufficient reason alone to deny a similar bifurcation request Defendants made in that litigation:

> Given the situation with the ongoing coronavirus conditions and limitations, empaneling even a single jury taxes our society and the judicial system far more than under normal circumstances. That

consideration alone is arguably sufficient for the Court to deny Defendants' request.

*Westerfield v. Ethicon, Inc.*, 2:20-cv-04803-GW, Dkt. No. 160 at 1 (C.D. Cal. Nov. 11, 2021), *found at* ECF No. 205-9 at 2-3. This language was quoted by Judge Ishii of the Eastern District of California in denying another bifurcation request from Defendants in *Enborg v. Ethicon*, 2022 WL 1122618, at *4.

Having ignored the impact on the courts from Covid, the defense has failed to show, as it must, a "compelling justification for deviating from the 'one trial' norm and bifurcating this case." *Enborg*, 2022 WL 1122618, at *4. Even without the ongoing pandemic, bifurcation would still be improper.

## B. Defendants' Statute of Limitations Argument Lacks Evidentiary Support.

As a threshold issue, before it can be determined whether bifurcation would serve the purposes of Rule 42(b), there must be evidence that Defendants have a viable statute of limitations defense. *See Soto v. Sweetman*, 882 F.3d 865, 876 (9th Cir. 2018) ("approv[ing] a bifurcated trial when there is a genuine dispute of a material fact regarding . . . the statute of limitations"); *see also Heatherman*, 2021 WL 2138543, at * 5-6 (denying Ethicon's bifurcation motion, in part, because the court did "not view the limitations issue as a slam dunk for the defendants, and thus holding two trials, if that becomes necessary, would not promote economy or expedition.").

California's two-year statute of limitations governs Plaintiff's claims for strict liability – failure to warn, negligence (failure to warn and design defect), and negligent misrepresentation claims. *See* Cal. Code Civ. Proc. § 335.1 A three-year statute of limitations governs Plaintiff's common law fraud, fraudulent concealment and CLRA claims. *See* Cal. Code Civ. Proc. § 338(d); *see also* Cal. Civ. Code § 1783. Plaintiff's UCL claim is governed by a four-year statute of limitation. *See* Cal. Bus. & Prof. Code § 17208.

The statute of limitations does not begin to run under California law until all elements to the cause of action have accrued. *See Platt Elec. Suppy, Inc. v. EOFF Elec., Inc.,* 522 F.3d 1049, 1054 (9th Cir. 2008); *see also Fox v. Ethicon-Endo Surgery, Inc.* (2005) 35 Cal. 4th 797, 806-07. But "physical injury alone is often insufficient to trigger the statute of limitations." *Fox,* 35 Cal. 4th at 808, n. 2; *accord Slovensky v. Friedman* (2006) 142 Cal. App. 4th 1518, 1528 (although accrual "ordinarily occurs on the date of the plaintiff's injury, accrual is postponed until the either discovers or has reason to discover the existence of a claim."). An injury from the Gynemesh PS alone is not sufficient to trigger the statute of limitations. Not until evidence shows the Plaintiff was aware these injuries were caused by the Gynemesh PS and that Defendants had committed some wrongdoing does the statute of limitations begin to run in California. *See Jolly,* 44 Cal. 3d at 1109-10 (California's "discovery rule provides that the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause."); *see also Fox,* 35 Cal. 4th at 813 ("a plaintiff's ignorance of wrongdoing involving a product's defect will usually delay accrual" if wrongdoing is essential to the plaintiff's cause of action).

Defendants' statute of limitations argument is based on selected testimony from Plaintiff's deposition which occurred in 2019 many years after the events Plaintiff was being questioned about had occurred. Not surprisingly given the lengthy passage of time between the events being discussed and her deposition, Mrs. Parks' repeatedly reiterated that she could not recall the dates with any certainty. (*See, e.g.,* Excerpts of Transcript of Deposition of Donna Parks at 35:14-23 [noting "You know, I really cannot recall … I'm not real good on dates if you'll forgive me…"], attached hereto as Exhibit A"); *see also* Ex. A at 38:3-4 ("I cannot remember. I can't recall when I received it."); 50:19-20 (Mrs. Parks' noting "I can't remember the dates…"); 51:17-19 ("I'm not real familiar with the timelines…").[2] Defense counsel readily informs Mrs. Parks "I'm not holding you to

_____

[2] All exhibits referenced herein are attached to the Declaration of Chris W. Cantrell, filed concurrently with this Memorandum in Opposition.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE TRIAL

specific dates – I'm just wanting a general timeline." Ex. A at 36:17-19. Relying on this representation, Mrs. Parks attempted to provide a timeline based on her best recollection of events that occurred many years prior but Mrs. Parks was clear that these were simply estimates. *See, e.g.,* Ex. A at 38:8-11 (answering "I'm guessing at yes, probably" and "Possibly" in response to questions about dates).

Fortunately, Mrs. Parks' medical records clearly refute Defendants' argument the statute of limitations began to run in 2010. In September 2010, Plaintiff experienced some urinary problems, specifically frequent urination which prompted her to seek medical care to identify the cause of these problems. In multiple visits with her primary care physician, Ralph Johnson, MD, from September thru November 2010, Mrs. Parks was found to be suffering from either a persistent urinary tract infection or multiple UTIs. (*See* 9/02/2010 thru 11/22/2010 Ralph Johnson, MD Medical Records, attached hereto as "Exhibit B"). The medical records reveal the UTI to be the cause of her frequent urination and pain and no issues with either her Desara sling or Gynemesh PS implant were noted, or even hinted at, by Dr. Johnson in the medical records. *Id.* The fact the UTI was not related to Plaintiff's Gynemesh PS means no claim had yet accrued as she had not yet suffered an injury from the Gynemesh PS. *Platt*, 522 F.3d at 1054 (noting under California law, the statute of limitations does not begin to run until all elements of the cause of action have accrued.) Therefore, her statute of limitation could not have begun at this time. Irrespective, Mrs. Parks had no reason to suspect that a common UTI(s) was related in any way to her Gynemesh PS implant, much less some suspicion of wrongdoing that would trigger the statute of limitations. *See* Ex. B; *Jolly*, 44 Cal. 3d at 1109-10 (the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.").

The evidence shows that it was not until 2013 that Mrs. Parks both suffered injuries which she knew or suspected to be related to her Gynemesh PS and possessed

some suspicion or knowledge of wrongdoing on the part of Defendants. After experiencing some urinary issues such as an inability to void, urge incontinence and stress incontinence as well as some intermittent vaginal pain and dyspareunia, Plaintiff sought medical treatment. Her first visit to a doctor regarding the aforementioned medical problems was on October 17, 2013 when she visited Dr. Kenneth Doan, her primary care physician. (*See* Oct. 17, 2013 H&P Notes from Dr. Doan, attached hereto as "Exhibit C" to the Declaration of Chris Cantrell). Dr. Doan referred Plaintiff to a gynecologist at Sharp Rees-Stealy, Leslie Gray, MD, for further treatment regarding these problems. *See* Ex. C at 4. Plaintiff was examined by Dr. Gray on October 31, 2013 for complaints of "urge and stress incontinence requiring pads" as well as "vaginal pain and dyspareunia precluding intercourse." (*See* Oct. 31, 2013 H&P Notes from Dr. Gray, attached hereto as "Exhibit D"). Dr. Gray's physical examination found Plaintiff was suffering from vaginal mesh banding and contraction with Dr. Gray noting there were "2 horizontal firm ridges of tissue-covered material [mesh]" on Plaintiff's "anterior vaginal wall." *Id.* Dr. Gray then referred Ms. Parks to Dr. Emily Cole of Sharp Mary Birch Hospital, who is an expert in treating mesh-related complications. *See* Ex. D at 4. Dr. Cole examined Mrs. Parks on December 16, 2013 for her urological complaints including urge incontinence, stress incontinence and voiding issues as well as "some pelvic pain" and "significant dyspareunia." (*See* Dec. 16, 2013 Consultation Note from Dr. Cole, attached hereto as "Exhibit E"). Dr. Cole's physical exam revealed Plaintiff's vagina was fixed in nature with painful palpation of the Gynemesh anteriorly noting: "She has very little mobility of her anterior vaginal wall. She is quite tender to palpation bilaterally as the arms of the mesh course into the pelvic sidewall." (*See* Jan. 17, 2014 Cystoscopy Procedure Notes, attached hereto as "Exhibit F"). Dr. Cole recommended "removal of the anterior vaginal wall mesh to treat her vaginal pain and dyspareunia. On physical exam, she has point tenderness over the areas where the arms of the mesh were placed

1    to the pelvic floor musculature." (*See* Jan. 23, 2014 Progress Notes, attached hereto as

2    "Exhibit G").

3         Simply put, there is no evidence in the record to support Defendants' argument

4    that any of Mrs. Parks' claims are time-barred. The evidence shows that not until 2013

5    were all the elements sufficient to trigger the statute of limitations present and Plaintiff's

6    case was "filed" on July 12, 2013.[3] The weakness of Defendants' statute of limitations

7    argument demonstrates no judicial economy to support bifurcation exists in the instant

8    case. *See Heatherman*, 2021 WL 2138543, at *2 (D. Colo. Jan. 22, 2021) (finding bifurcation

9    "would not promote economy or expedition" because the court did "not view the

10   limitations issue as a slam dunk for defendants" making two trials a possibility.).

11        **C.    Bifurcation Will Prejudice Mrs. Parks**

12        "Bifurcating a case adds costs to the parties in the form of the additional expense

13   associated with two trials and adds delay in final resolution." *Dodgeland of Columbia, Inc. v.*

14   *Federated Mut. Ins. Co.*, 2009 WL 10710815, at *3 (D.S.C. July 15, 2009); *see Calmar*, 850 F.

15   Supp. at 866 & n. 1; ECF No. 205-9 at 1, 4. The "difficulties" Mrs. Parks "may face in

16   publicly testifying twice about her personal health issues" only increases the prejudice to

17   Mrs. Parks. *Thornton*, 2021 WL 5578931, at *5. In sharp contrast to the definite and

18   substantial harm to Plaintiff from bifurcation, Defendants' statute-of-limitations defense

19   is nowhere close to a "slam dunk." *Heatherman*, 2021 WL 2138543, at *2-3.

20        As shown above, a full merits trial on Plaintiff's common law fraud, fraudulent

21   concealment claims, and consumer protection claims will occur notwithstanding the

22

23   [3] Plaintiff's counsel served Defendants with Plaintiff's short form complaint and waiver

24   of service on July 12, 2013 pursuant to MDL 2327 Pretrial Order No. 49. (*See* Pretrial
     Order No. 49 "Stipulated Agreed Order Regarding Delayed Filing and Application to

25   the Statute of Limitations," attached hereto as "Exhibit H"). Although Plaintiff's

26   complaint was not electronically filed until February 13, 2014, pursuant to the MDL
     Court's delayed filing order(s), the date of service is to be considered the "filing date"

27   for purposes of any statute of limitations calculation. *See* Ex. H at 2.

11

28

1   outcome of any bifurcated trial on the statute of limitations. Given these facts, Mrs. Parks

2   shouldn't be forced into a second trial, compelled to incur added expenses for two trials

3   and to suffer unnecessary delay in resolving a case that commenced more than nine years

4   ago. *See Calmar*, 850 F. Supp. at 866 & n. 1; *Dodgeland*, 2009 WL 10710815, at *3; ECF

5   No. 205 at 5 n. 1. In *Snyder*, for example, the court found significant that the "case has

6   been pending found for over five years," *Snyder v. Bank of Am., N.A.*, 2020 WL 6462400,

7   at *13 (N.D. Cal. Nov. 3, 2020), four years shorter than the time this case has been

8   pending. ECF No. 205 at 5 n. 1. This case has been pending since 2013, and the Court

9   should be "disinclined to take any action that would delay resolution." *Davis*, 2022 WL

10   2116337, at *2; *see* ECF No. 205-9 at 1, 4 (bifurcation "would also force Plaintiff to incur

11   the costs of two trials and delay the ultimate resolution of her claims, when the case is

12   already over eight years old.").

13         According to the defense, bifurcation will "substantially reduce[]" the number

14   witnesses, "greatly reduce[]" the number of exhibits, and with fewer witnesses and

15   exhibits, continues the argument, "there will be fewer issues involving scheduling of

16   witnesses, and considerably fewer motions *in limine*, evidentiary rulings, instructional and

17   other mid-trial issues, trial briefs, and post-trial motions." ECF No. 205 at 9. But there

18   "is substantial overlap in the issues, facts, evidence, and witnesses required for the state

19   of limitations matter and liability," *Mason*, 2021 WL 2580113 at *1 (denying bifurcation

20   on statute of limitations defense); *see Gencarelli v. Twentieth Century Fox Film Corp.*, 2018

21   WL 376664, at *7 (C.D. Cal. Jan. 11, 2018) ("If two issues are so interwoven that they

22   'cannot be submitted to the jury independently … without confusion and uncertainty

23   which would amount to a denial of a fair trial,' then bifurcation is not appropriate.").

24         Under California law, the statute of limitations does not start at the date the

25   plaintiff suffers an injury, but instead it "is delayed until the plaintiff is aware of her injury

26   and its negligent cause." *Jolly*, 44 Cal. 3d at 1109-10. Therefore, the statute of limitations

27   issue is heavily fact-intensive and would, at the very least, involve testimony from Mrs.

28

1    Parks, some of her treating physicians and possibly some of Plaintiff's experts and family
2    members as well as extensive examination of her medical records. Based on the facts of
3    this case and California law, it "appears there will be significant overlap in evidence
4    between the two proposed trials, given that the statute of limitations defense is premised
5    on the idea that Plaintiff[] should have been aware of [Gynecare's] possible defectiveness
6    sooner." *Acosta*, 2021 WL 6104868, at *1.

7        Mrs. Parks alleges that any statute of limitations would be tolled under the
8    fraudulent concealment doctrine because Defendants engaged in activity to conceal the
9    existence of the true risks, dangers and defects with the Gynemesh PS. ECF No. 205-9
10   at 1, 4; ECF No. 1 at 3. This issue requires the presentation of substantial evidence,
11   including among other things: (1) Defendants' knowledge of complications associated
12   with Gynemesh PS; (2) what information regarding these complications was (and was
13   not) transmitted to physicians; (3) what complications were told to Defendants; (4) what
14   Defendants reported to the FDA; and (5) what Defendants' sales reps and proctors were
15   told to disclose to physicians. ECF No. 56-1 at ¶¶ 82-88, 249-53. Because most of this
16   same evidence would also be presented at any merits trial, substantial duplication of
17   evidence will occur if this matter is bifurcated. This, by itself, justifies the denial of
18   Defendants' motion. *See Davis*, 2022 WL 2116337, at *1; *Acosta*, 2021 WL 6104868, at *1;
19   *Thornton*, 2021 WL 5578931, at *3; *Mason*, 2021 WL 2580113 at *2-3; *Heatherman*, 2021
20   WL 2138543, at *3.

21       All told, the claims with three- and four-year statutes of limitations would still be
22   tried regardless of how the jury resolves the limitations defense for Plaintiff's claims for
23   failure to warn and negligence. *See*, *supra*, § IV.B. As such, bifurcation neither
24   "substantially reduce[s]" the number of witnesses nor "greatly reduce[s]" the number of
25   exhibits, as Defendants assert. ECF No. 205 at 9. Despite these significant facts, which
26   the defense ignores altogether, Defendants would have this Court order two separate
27   trials, with two separate juries under the guise of reducing costs. *See* ECF No. 205 at 4,
28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE TRIAL

1  9-10. This would not conserve judicial resources or the time and resources of the Parties,

2  but would only double the costs in time and resources to this Court, Plaintiff and her

3  counsel and the jury venire. *Calmar*, 850 F. Supp. at 866 & n. 1; *Heatherman*, 2021 WL

4  2138543, at *2; *Dodgeland*, 2009 WL 10710815, at *3; *see* ECF No. 205-9 at 1, 4. Plaintiff

5  is "prepared to present all aspects of her case in one fell swoop," and permitting

6  Defendants to try this matter piecemeal would prejudice Mrs. Parks. *Enborg*, 2022 WL

7  1122618, at *4.

8         **D.**    **Defendants Will Suffer No Prejudice from a Single Trial**

9        In the defense's view, bifurcation will protect Defendants from "inherent"

10  prejudice. ECF No. 205 at 8. Yet as the *Heatherman* court explained, "statute[s] of

11  limitations are frequently tried together with the other claims and defenses in a case.

12  Indeed, the concept of any affirmative defense is that the defendant is telling the jury that

13  the plaintiffs' claims are not true, but if they were true, then the case nevertheless fails

14  for a separate reason, such as untimeliness." *Heatherman*, 2021 WL 2138543 at *13. In

15  *Westerfield*, Judge Wu rejected Defendants' prejudice argument explaining:

16         As to the issues of prejudice (to Defendants) and juror confusion, the Court

17         disagrees with Defendants that they will be prejudiced by a single trial
because of a concern that they will have to prove their own wrongful

18         conduct to prevail on the statute of limitations discovery rule issue. The
argument will simply be if Defendants engaged in wrongful conduct,

19         Plaintiff knew about it by a certain date. Defendants will under no

20         circumstances be required to prove that their own conduct was wrongful.
Also, that is not a distinction that is likely to confuse a thoughtful jury,

21         especially assuming clear and attentive advocacy from Defendants' counsel.

22  ECF No. 205-9 at 2, 4-5. Judge Fischer, also of the Central District of California, adopted

23  Judge Wu's reasoning in *Acosta v. Ethicon, Inc.*, 2021 WL 6104868, at *1 (quoting

24  *Westerfield*). Nor was the *Enborg* court "convinced … that it is prejudicial to require

25  Ethicon to explain the seeming conflict between those two positions to a single jury."

26  *Enborg*, 2022 WL 1122618, at *4. The defense simply ignores these common-sense

27  approaches, all taken in Ethicon mesh cases and all decisions from California district

28

1  courts, and instead urges the Court to follow *Adams v. Zimmer US, Inc.*, a Pennsylvania

2  case that has nothing to do with mesh. *See* ECF No. 205 at 11-12; ECF No. 205-7 at 2-

3  4. Defendants, moreover, "fail to explain how the act of establishing their statute of

4  limitations defense is different from any other case involving an affirmative and therefore

5  should be treated differently in this case." *Thornton*, 2021 WL 5578931, at *5.

6        Significant prophylactics exist as well. "Any prejudice Defendants may experience

7  from presenting a defense and an affirmative defense in one trial can be overcome by

8  utilizing available trial tools such as specialized jury instructions, structured verdict forms,

9  and the opportunity to seek a directed verdict." *Thornton*, 2021 WL 5578931, at *5; *accord*

10  *Heatherman*, 2021 WL 2138543, at *4. Given Defendants have tried at least three dozen

11  mesh cases without bifurcation (ECF No. 205-4 at 11-12), the defense should "be able

12  to craft clear and concise instructions that will direct the jury." *Davis*, 2022 WL 2116337,

13  at *2. Defendants' "skilled legal team, aided by explanatory instructions, can determine

14  an effective way to present the 'inconsistent' defenses." *Heatherman*, 2021 WL 2138543,

15  at *4.

16        "Absent some experience demonstrating the worth of bifurcation, separation of

17  issues for trial is not to be routinely ordered." *Natural-Immunogenics v. Newport Trial Grp*,

18  2018 WL 6136784, at *2 (C.D. Cal. Apr. 17, 2018) (internal quotations omitted); *accord*

19  *Enborg*, 2022 WL 1122618, at *2. Defendants, however, adduce no evidence

20  "demonstrating the worth of bifurcation" in transvaginal mesh cases under California

21  law, especially ones, like this case, where "there will be significant overlap in evidence

22  between the two proposed trials," *Acosta*, 2021 WL 6104868, at *1. In denying a similar

23  bifurcation request from Defendants, the *Thornton* court explained it was "unaware of a

24  pelvic mesh case that was resolved in a defendant's favor upon a jury verdict in a

25  bifurcated statute of limitations trial." *Thornton*, 2021 WL 5578931, at *3 n. 5 & 5. Nothing

26  in the defense's motion indicates the *Thornton* court was mistaken or since then this fact

27  has changed. *See* ECF No. 205 at 4-13.

28

In the end, the Court "must balance" the putative prejudice Defendants contend against the actual prejudice to Mrs. Parks from increased litigation costs, delays in final resolution, and "having to present [her] merits evidence twice in separate trials." *Heatherman*, 2021 WL 2138543, at *4; *accord Davis*, 2022 WL 2116337, at *2; *see also Calmar*, 850 F. Supp. at 866 & n. 1; *Wesco*, 2020 WL 4369496, at *2; *Dodgeland*, 2009 WL 10710815, at *3. Delay here is even more deleterious to Plaintiff considering she is now 73 years-old and this case has been pending for more than nine years. ECF No. 205 at 5 n. 1. Nothing in the defense's moving papers comes even close to establishing a "substantial risk of unfair prejudice" to Defendants that "clearly outweighs" the demonstrated "prejudice going the other way." *Heatherman*, 2021 WL 2138543, at *4. Defendants fall short of meeting their burden of proof. *See Calmar*, 850 F. Supp. at 866 & n. 1; *Davis*, 2022 WL 2116337, at *2; *Enborg*, 2022 WL 1122618, at *4; *Heatherman*, 2021 WL 2138543, at *4; *Wesco*, 2020 WL 4369496, at *2.

Defendants' authorities are inapposite to this case. *See* ECF No. 205 at 11-12. The Ninth Circuit's decision in *United States v. 1,071.08 Acres* involved the separate trials of two distinct plaintiffs, whose "interests … were sufficiently divergent." *1,071.08 Acres*, 564 F.2d 1350, 1353 (9th Cir. 1977). These facts are entirely irrelevant to the case at hand. *Crissman v. Ethicon, Inc.* is a decision from a California court, but the plaintiffs there "did not file an opposition," ECF No. 205-2 at 2. The other mesh cases Defendants cite, *Gardner v. Ethicon* and *Heinrich v. Ethicon*, are cursory, never address California statutes of limitations, and fail to discuss any of the trial safeguards the courts identified in *Davis*, 2022 WL 2116337, at *2, *Thornton*, 2021 WL 5578931, at *5, and *Heatherman*, 2021 WL 2138543, at *4. *See* ECF No. 205-4 at 17-18; *Heinrich*, 2021 WL 2801961, at *1.

The course of events here and elsewhere indicate Defendants, are using bifurcation simply as a means to attempt to extract settlement from a Plaintiff who's been awaiting trial for more than nine years. They all but admit this fact in their moving papers. *See* ECF No. 205 at 8 n. 4 ("The *Crissman* matter resolved through settlement shortly after

1  bifurcation was granted."). The Court should not reward Defendants' cynical tactics and

2  further delay the resolution of Mrs. Parks' claims by having separate trials.

### E.  Defendants Fail to Show Bifurcation Will Lead to More Accurate Outcomes

5  Defendants contend bifurcation would lead to "more accurate outcomes." ECF

6  No. 205 at 12. The *Davis* court rejected this same argument, explaining it "is confident

7  that a jury composed of capable community members led by the parties' arguments and

8  the Court's instructions will be able to reach a well-reasoned and fair decision on a full

9  trial of all issues." *Davis*, 2022 WL 2116337, at *2. The *Acosta* and *Westerfield* courts both

10  rejected the argument that bifurcation was necessary to avoid "jury-confusion," *Acosta*,

11  2021 WL 6104868, at *1; *accord* ECF No. 205-9 at 2, 4-5. The defense ignores these

12  rulings, all made in cases involving, like this one, Ethicon mesh products.

13  According to Defendants, bifurcating this matter into two separate trials will

14  "'improve comprehension of the issues and evidence.'" ECF No. 205 at 12 (quoting *In*

15  *re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 452 n. 5 (3d Cir. 1997). Defendants provide

16  only a select excerpt from *Paoli*. In context, the Third Circuit wrote, "Severance of the

17  question of liability from other issues can … also improve comprehensive of the issues

18  and evidence." *Id.* But under California law, the "question of liability" inheres in the

19  limitations question, for the "statute of limitations begins to run when the plaintiff

20  suspects or should suspect that her injury ***was caused by wrongdoing***, that someone has

21  done something ***wrong*** to her." *Jolly*, 44 Cal. 3d at 1109-10 (emphasis added). Although

22  Defendants contend the "evidence and argument" in a Phase 1 trial will "focus[]

23  exclusively" on the "limitations issue" (ECF No. 205 at 12), they never address the

24  California Supreme Court's binding instruction in *Jolly*. *See PSM Hldg. Corp. v. National*

25  *Farm Fin. Corp.*, 884 F.3d 812, 820 (9th Cir. 2018) ("When interpreting state law, federal

26  courts are bound by decisions of the state's highest court"). Nothing in the facts of this

1  case or the laws of California indicate, as the defense argues, that bifurcation will "ensure

2  [a] focused consideration." *See* ECF No. 205 at 13.

3      **F.    Separate Trials Would Violate Plaintiff's Seventh Amendment Rights**

4          Bifurcation of this case into two separate trials also would Mrs. Parks' Seventh

5  Amendment rights. Here, the "questions sought to be bifurcated [are] '(s)o interwoven

6  ... that the (one) cannot be submitted to the jury independently of the (other) without

7  confusion and uncertainty which would amount to a denial of a fair trial." *Arthur Young*

8  *& Co. v. United States Dist. Ct.*, 549 F.2d 686, 693 (9th Cir. 1977); *accord United Air Lines,*

9  *Inc. v. Wiener*, 286 F.2d 302, 306 (9th Cir. 1961). The defense's proposed "bifurcation [is]

10  unconstitutional." *Arthur Young*, 549 F.2d at 693.

11          Under California law, "the statute of limitations begins to run when the plaintiff

12  suspects or should suspect that her injury was caused by wrongdoing, that someone has

13  done something wrong to her." *Jolly*, 44 Cal. 3d at 1109-10. Much of the evidence

14  regarding whether Mrs. Parks was on notice of "wrongdoing" is "interwoven" with the

15  testimony and documents that establish Plaintiff's *prima facie* case. *Arthur Young*, 549 F.2d

16  at 693. The thoroughly interwoven nature of the evidence shows bifurcation would

17  violate Plaintiff's Seventh Amendment rights.

18  **IV.    CONCLUSION**

19          Absent some evidence "demonstrating the worth of bifurcation 'separation of

20  issues for trial is not to be routinely ordered ....'" *Silverwing at Sandpoint, LLC v. Bonner*

21  *County*, 2014 WL 6629600, at *34-35 (D. Idaho Nov. 21, 2014) (quoting Fed. R. Civ. P.

22  42(b) (advisory committee notes to the 1966 amendment)); *accord Enborg*, 2022 WL

23  1122618, at *2. Defendants have failed to meet their burden of showing the worth of

24  bifurcation in this matter. *Wesco*, 2020 WL 4369496, at *1 (the moving party bears the

25  "burden to demonstrate that judicial economy would be promoted and that the non-

26  moving party will not suffer prejudice."). For the reasons above, Defendants' Motion for

27  a Separate Trial on Statute of Limitations (Bifurcation) should be denied.

28

1       DATED:  July 28, 2022            Respectfully submitted,

By: /s/ Chris W. Cantrell

Chris W. Cantrell (SBN 290874)

**DOYLE APC**

550 West B Street, Fourth Floor

San Diego, CA 92101

Telephone: (619) 736-0000

William J. Doyle (SBN 188069)

John Lowther (SBN 207000)

**DOYLE LOWTHER LLP**

4400 NE 77th Avenue, Suite 275

Vancouver WA 98662

Telephone: (360) 818-9320

Facsimile: (360) 450-3116

*Attorneys for Plaintiff*

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE TRIAL

# CERTIFICATE OF SERVICE

The undersigned hereby certifies on July 28, 2022, a true and correct copy of the foregoing Plaintiff's Opposition to Defendants' Motion to Bifurcate Trial on the Statute of Limitations Defense was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants registered to receive service in this case.

Respectfully Submitted,

/s/ Chris W. Cantrell
Chris W. Cantrell (SBN 290874)
**DOYLE APC**
550 West B Street, Fourth Floor
San Diego, CA 92101
(619) 736-0000 phone

*Attorney for Plaintiff*

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE TRIAL