Chris W. Cantrell (SBN 290874)
Doyle APC
550 West B Street, Fourth Floor
San Diego, CA 92101
(619) 736-0000 phone
(619) 736-1111 fax

William J. Doyle (SBN 188069)
John A. Lowther (SBN 207000)
Doyle Lowther LLP
4400 NE 77th Avenue, Suite 275
Vancouver, WA 98662
(360) 818-9320 phone
(360) 450-3116 fax

*Attorneys for the Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA PARKS,<br><br>　Plaintiff,<br><br>　vs.<br><br>ETHICON, INC., ET AL.,<br><br>　Defendants. | Case No.: 3:20-cv-00989-LL-RBB<br><br>PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE PRECLUSION<br><br>(Filed concurrently with Plaintiff's Motion for Partial Summary Judgment; Declaration of Chris W. Cantrell and [PROPOSED] Order)<br><br>Judge:　Honorable Linda Lopez<br>Court:　5D, Fifth Floor |

# Table Of Contents

I.   Introduction ........................................................................................................................... 1

II.  *People of California v. Johnson & Johnson* ........................................................................... 2

III. Argument ............................................................................................................................. 4

    A.   The issues are identical ................................................................................................ 5

    B.   The issues were actually litigated in the prior action .................................................. 7

    C.   The issues were necessarily decided in the prior action .............................................. 7

    D.   The trial court's findings are final for purposes of issue preclusion ........................... 7

        1.   The unappealed findings are final for issue preclusion ....................................... 8

        2.   The appealed findings are final for issue preclusion ........................................... 9

    E.   Defendants were parties to the prior action ............................................................... 10

    F.   Public policy supports application of issue preclusion .............................................. 10

    G.   Applying issue preclusion is not unfair ..................................................................... 12

        1.   Plaintiff did not take a "wait and see" approach ............................................... 12

        2.   Defendants vigorously defended the AG action ................................................ 13

        3.   Alleged inconsistent judgments do not bar preclusion ...................................... 13

        4.   No procedural opportunities bar issue preclusion ............................................. 14

IV.  The Court Should Judicially Notice The Statement Of Decision ....................................... 15

V.   Conclusion ......................................................................................................................... 15

# Table Of Authorities

**CASES**

*Applied Med. Res. Corp. v. United States Surgical Corp.*, 352 F. Supp. 2d 1119 (C.D. Cal. 2005) ......... 10, 13

*Barajas Centeno v. City of Carlsbad*, 2020 WL 1984038 (S.D. Cal. Apr. 27, 2020) ......................... 5

*Burdette v. Carrier Corp.*, 158 Cal. App. 4th 1668 (2008) ....................................................... 6

*Cook v. Harding*, 879 F.3d 1035 (9th Cir. 2018) ................................................................. 7

*DKN Holdings, LLC v. Faerber*, 61 Cal. 4th 813 (2015) ........................................................ 1, 2

*Dodd v. Hood River County,* 59 F.3d 852 (9th Cir. 1995) ....................................................... 4

*Freeman v. Ethicon, Inc.*, 2022 WL 3147194 (C.D Cal. Aug. 4, 2022) .................................... passim

*Hardwick v. County of Orange*, 980 F.3d 733 (9th Cir. 2020) ............................................... 5, 6

*Hernandez v. City of Pomona*, 46 Cal. 4th 501 (2009) ........................................................... 7

*Holguin v. City of San Diego*, 135 F. Supp. 3d 1151 (S.D. Cal. 2015) ..................................... 4, 6

*In re Tomkow*, 563 B.R. 716 (B.A.P. 9th Cir. 1997) ............................................................. 9

*Jefferson v. City of Tarrant*, 522 U.S. 75 (1997) ................................................................ 10

*Key v. Tyler*, 34 Cal. App. 5th 505 (2019) ........................................................................ 15

*Khanna v. State Bar of Cal.*, 505 F. Supp. 2d 633 (N.D. Cal. 2007) ........................................ 15

*Lies v. Farrell Lines, Inc.*, 641 F.2d 765 (9th Cir. 1981) ........................................................ 4

*Longshoremen v. Davis*, 476 U.S. 380 (1986) .................................................................... 10

*Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394 (9th Cir. 1996) ........................................ 5

*Meridian Fin'l Serv., Inc. v. Phan*, 67 Cal. App. 5th 657 (2021) .............................................. 9

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) ...................................................... 13, 15

*Parks v. Ethicon, Inc.*, 2020 WL 6118774 (S.D. Cal. Oct. 16, 2020) ............................. 2, 6, 12, 14

*People v. Dollar Rent-a-Car Sys., Inc.*, 211 Cal. App. 3d 119 (1989) ........................................ 13

*People v. Santamaria*, 8 Cal. 4th 903 (1994) ..................................................................... 9

*ReadyLink Healthcare, Inc.* v. *State Comp. Ins. Fund*, 754 F.3d 754 (9th Cir. 2014) .................... 11

*Robi v. Five Platters, Inc.*, 838 F.2d 318 (9th Cir. 1988) ...................................................... 14

*Rodriguez v. City of San Jose*, 930 F.3d 1123 (9th Cir. 2019) ........................................... passim

*Scafidi v. Las Vegas Metro. Police Dep't*, 966 F.3d 960 (9th Cir. 2020) .................................... 4

*State v. Johnson & Johnson*, 77 Cal. App. 5th 295 (2022) ............................................... passim

*Syverson v. IBM Corp.*, 472 F.3d 1072 (9th Cir. 2007) ............................................................. 12, 13, 14

*United States v. Geophysical Corp. of Alaska*, 732 F.2d 693 (9th Cir. 1984) .................................... 12

*Vandenberg v. Superior Court*, 21 Cal. 4th 815 (1999) ................................................................. 4

*White v. City of Pasadena*, 671 F.3d 918 (9th Cir. 2012) ............................................................. 5

**STATUTES**

Business & Professions Code §§ 17200 *et. seq.* ............................................................................ 2

Business & Professions Code §§ 17500 *et. seq.* ............................................................................ 2

**RULES**

Federal Rule of Civil Procedure 56 ................................................................................................ 4

Federal Rule of Evidence 901 ....................................................................................................... 15

## I. Introduction

Plaintiff Donna Parks moves for partial summary judgment under the doctrine of issue preclusion, which "operates as a shield against one who was a party to [a] prior action to prevent that party from relitigating an issue already settled in [a] previous case." *DKN Holdings, LLC v. Faerber*, 61 Cal. 4th 813, 827 (2015). In *People v. Johnson & Johnson*, a state trial court "found there were serious, long-term risks and complications associated with [Defendants'] pelvic mesh products of which [Defendants] w[ere] aware," including the Gynemesh PS device at issue here. *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 308-09, 311 (2022). These included: (1) incapacitating pelvic pain; (2) dyspareunia; (3) vaginal cavity distortion, causing interference with intercourse; (4) mesh shrinkage and contracture, leading to pelvic pain and dyspareunia; (5) chronic foreign body reaction; and (6) inflammation. Statement of Decision, *People v. Johnson & Johnson*, at 35-36 ("Decision") (attached hereto as Exhibit A). These factual findings are "settled" issues, and Defendants cannot relitigate them (or others) in this case. *DKN Holdings*, 61 Cal. 4th at 827.

In the Gynemesh IFU, the *Johnson & Johnson* court concluded Defendants "misstated or omitted: (1) the range of complications associated with mesh; (2) the severity or duration of the complications; (3) the source of the complications; and/or (4) the potential irreversibility of the complications." *Johnson & Johnson*, 77 Cal. App. 5th at 321. The IFU also was "deceptive because [it] stated the polypropylene mesh composing [Gynemesh PS] was not subject to degradation or weakening by the action of tissue enzymes. … [T]he evidence showed the mesh can oxidize, or degrade, resulting in cracking or fragmentation on the mesh surface." *Id.* at 313. These findings and others have survived appeal. *Id.* at 306.

Once an issue has been finally decided against a party, that party can no longer relitigate the issue in another lawsuit. *DKN Holdings*, 61 Cal. 4th at 827. A California court has rendered numerous factual findings about the properties of Gynemesh, the material misrepresentations and omissions in the Gynemesh IFU, and Defendants' knowledge of Gynemesh complications at product launch. *See, e.g.*, Ex. A at 35-37, 39-40. Issue preclusion bars Defendants from relitigating these issues and other factual and legal findings from *Johnson &*

*Johnson* in this Court. *DKN Holdings*, 61 Cal. 4th at 827. The state court's findings are established facts in *Parks* and cannot be disputed by Defendants at trial. *Id.*

In another transvaginal mesh case against Defendants, Judge Consuelo Marshall of the Central District of California held the findings in *People v. Johnson & Johnson* were preclusive and granted the plaintiff partial summary judgment. *Freeman v. Ethicon, Inc.*, __ F. Supp. 3d __, 2022 WL 3147194, at *7-8 (C.D. Cal. Aug. 4, 2022). As in *Freeman*, the facts here support the application of issue preclusion. And like *Freeman*, the Court should grant Mrs. Parks's summary judgment motion and preclude Defendants from relitigating issues already adjudicated in the *Johnson & Johnson* litigation.

## II.   People of California v. Johnson & Johnson

In 2016, the California Attorney General filed suit against Defendants for violations of the Unfair Competition Law ("UCL") and the False Advertising Law ("FAL"). *See* Cal. Bus. & Prof. Code §§ 17200 *et seq.* & 17500 *et seq.* Among other things, the Attorney General charged Defendants with willfully circulating IFUs and marketing literature misrepresenting the actual risks associated with the use of their transvaginal mesh products, including the Gynemesh PS at issue. *Johnson & Johnson*, 77 Cal. App. 5th at 310; *see Parks v. Ethicon, Inc.*, 2020 WL 6118774, at *1 (S.D. Cal. Oct. 16, 2020). A nine-week trial followed wherein testimony from more than forty witnesses was taken. On January 20, 2020, the trial court issued "an extremely thorough, 128-page statement of decision," finding Defendants had violated both the UCL and FAL in marketing Gynemesh PS and other transvaginal mesh products, and ordering civil penalties of $343 million. *Johnson & Johnson*, 77 Cal. App. 5th at 310; *see generally* Ex. A. The trial court made a series of factual and legal findings about material misrepresentations and omissions in Gynemesh IFUs and other product literature. Concerning erosion, a complication Mrs. Parks has suffered, at the time of product launch, Defendants knew Gynemesh PS: (1) had a "lifelong/recurrent risk of vaginal exposures"; (2) had a "lifelong/recurring risk of erosion into other organs"; and (3) was subject to "large-scale erosions that are difficult to treat." Ex. A at 35 (simplified). Regarding the pain Mrs. Parks suffers from the mesh, Defendants knew at the time of product launch the Gynemesh PS

causes: (1) "debilitating/life changing/chronic pain"; (2) "chronic groin/leg pain"; (3) "incapacitating pelvic pain"; and (4) "neuromuscular problems, including acute and/or chronic pain in the groin, thigh, leg, pelvic, and/or abdominal area." *Id.* (simplified).

Other findings involved injuries to sexual function, which Plaintiff also experiences. Before releasing Gynemesh to the market, Defendants knew the mesh causes: (1) "shrinkage leading to pelvic pain and dyspareunia"; (2) "pain to partner"; (3) "chronic dyspareunia"; (4) "distortion of vaginal cavity interfering with intercourse"; and (5) "risks to young, sexually active women." Ex. A at 36 (simplified). Despite this knowledge, the trial court found Defendants made "**no** mention of pain with intercourse in 2003-2012 Gynemesh PS IFUs," *id.* (simplified). As for mesh removal, which Mrs. Parks has undergone, Defendants knew before product release: (1) the "need for mesh removal for serious complications, including chronic pain or dyspareunia … may be difficult"; (2) "multiple revision surgeries may be necessary to treat adverse reactions, and significant dissection may be required"; and (3) "even after additional surgeries are performed, adverse reactions may not resolve." *Id.* (simplified). Defendants made "**no** mention of removal" and "**no** mention of serious complications that would require a significant removal" in the IFU. *Id.* (simplified).

Elsewhere the state court rendered factual findings about Gynemesh PS mesh properties. Ex. A at 39-40. The mesh causes, the court found, "chronic foreign body reaction and chronic inflammation." *Id.* at 39. Despite knowing at the time of launch Gynemesh (1) caused a "chronic foreign body reaction," (2) caused "inflammation," and (3) was "not inert," Defendants made "**no** mention of chronic foreign body response" in the IFU and instead misrepresented the mesh had only "'**minimal** inflammatory reaction'/'minimum to mild inflammatory reaction.'" *Id.* (simplified). The trial court found Gynemesh suffers from "shrinkage, contraction, bridging fibrosis." *Id.* at 40 (simplified). Before product launch, Defendants knew of Gynemesh's "shrinkage/contraction" but still misrepresented in the IFU the mesh had "bi-directional elasticity" and the "mesh remains soft and pliable." *Id.* (simplified). There's also the problem in Gynemesh, as the court found, of "bacterial adherence of mesh/subclinical infection." *Id.* (simplified). Although they knew of

"infection/biofilm" before the mesh was released to the market, Defendants made "**no** mention of heightened risk of infection/biofilm" in the Gynemesh IFUs. *Id.* (simplified). A complete list of the trial court's factual findings is attached hereto as Exhibit B.

Aside from striking the civil penalties concerning oral communications and reducing the civil penalty against Defendants from $343 million to $302 million, the Court of Appeal could "discern no other error" and affirmed the judgment as modified. *Johnson & Johnson*, 77 Cal. App. 5th at 306. The Supreme Court then denied review. *People v. Johnson & Johnson*, 2022 Cal. LEXIS 3871 (Cal. July 13, 2022). Five factual findings were never appealed to the Court of Appeal or to the California Supreme Court. *Freeman*, 2022 WL 3147194, at *7.

## III.  Argument

Partial summary judgment is a mechanism through which the court deems certain issues established before trial. *Holguin v. City of San Diego*, 135 F. Supp. 3d 1151, 1158 (S.D. Cal. 2015); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n. 3 (9th Cir. 1981) ("The procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit."). Summary judgment is appropriate when the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Under the doctrine of issue preclusion, as shown below, Plaintiff is entitled to summary judgment on those issues decided in the previous AG Action.

Issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Scafidi v. Las Vegas Metro Police*, 966 F.3d 960, 963 (9th Cir. 2020). Once a "court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Dodd v. Hood River Cnty.*, 59 F.3d 852, 863 (9th Cir. 1995); *Vandenberg v. Superior Court*, 21 Cal. 4th 815, 828 (1999) (precluding "a party to prior litigation from redisputing issues therein decided against him, even when those issues bear on different claims raised in a later case."). Issue preclusion "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same

party or his privy and of promoting judicial economy by preventing needless litigation." *Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1400 (9th Cir. 1996).

Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1130 (9th Cir. 2019) (simplified). The Court follows California's rules on issue preclusion when determining the preclusive effect of the issues of fact and law decided in *Johnson & Johnson*. *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012).

Under California law, issue preclusion applies when six criteria are met:

> (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) the issue to be precluded must have been actually litigated in the former proceeding; (3) the issue to be precluded must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding; and (6) application of issue preclusion must be consistent with the public policies of preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation.

*Rodriguez*, 930 F.3d at 1131-32 (simplified). As *Freeman* concluded in granting summary judgment, California law precludes Defendants from relitigating issues of fact and law the *Johnson & Johnson* court resolved. *Freeman*, 2022 WL 3147194, at *7-8. Here, the Court should grant Plaintiff's motion because the issue preclusion elements are met.

A.   **The issues are identical**

"'The identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." *Hardwick v. County of Orange*, 980 F.3d 733, 740 (9th Cir. 2020). In assessing the identical issue requirement, courts consider whether: (1) a substantial overlap exists between the evidence or argument to be advanced in both proceedings, (2) the new evidence or argument involves the application of the same rule of law in both proceedings, (3) pretrial preparation and discovery in the first action reasonably could have been expected to embrace the matter sought to be

presented in the second action, and (4) the claims involved in the two proceedings are closely related. *Holguin*, 135 F. Supp. 3d at 1160.

Both cases involve the Gynemesh PS medical device. *Parks*, 2020 WL 6118774, at *1; *Johnson & Johnson,* 77 Cal. App. 5th at 308. Both cases address Defendants' material misrepresentations and omissions to doctors and "depend[] on Defendants' marketing materials and Instructions for Use for their [Gynemesh PS] product[]." *Freeman*, 2022 WL 3147194, at *7. The "unappealed factual findings made in the state court case are issues present in this case: they all concern whether [Gynemesh PS] had 'dangerous properties,' and whether Defendants' mesh degrades." *Id.*; *see* Ex. A at 19-48, 62-63 (Decision). In *Freeman*, these facts demonstrated the "issues [we]re identical." *Freeman*, 2022 WL 3147194, at *7.

Other "identical factual allegations" are present. *Hardwick*, 980 F.3d at 740. These include: (1) the materiality of Defendants' misrepresentations and omissions in the Gynemesh IFU (*Johnson & Johnson,* 77 Cal. App. 5th at 326-27); (2) whether Defendants were aware or should have been aware their misrepresentations and omissions were false when made (*id.* at 317-18); (3) whether Defendants' omissions were "contrary to a representation actually made by [them], or an omission of fact [Defendants were] obligated to disclose" (*id.* at 325); (4) whether Defendants intended for doctors and patients to rely on their misrepresentations and omissions in the IFU and in other Gynemesh marketing literature (*id.* at 319-20); and (5) whether doctors and patients were apt to be deceived by Defendants' material misrepresentations and omissions (*id.* at 318-21). The "identical issue" requirement is met. *Hardwick*, 980 F.3d at 740; *Freeman*, 2022 WL 3147194, at *7.

The substantial overlap in witnesses and evidence in the AG Action and this case underscores that factual issues in both cases are identical. Of the fourteen current and former Ethicon/J&J employees who testified in the AG Action, twelve are scheduled to provide testimony in this case. Declaration of Chris Cantrell, at ¶¶ 2-3, hereinafter "Cantrell Decl." Of Defendants' eight expert witnesses in the AG Action, three were designated experts or witnesses here. *Id.* at ¶ 3. A significant part of the testimony from the witnesses in the AG Action was derived from deposition testimony taken in the *Ethicon* MDL, much of which will

be used in this matter. *Id.* at ¶ 4. All internal documents the trial court cited in its Decision, save those relating to the calculation of civil penalties, also come from the underlying MDL. *Id.* This element is met.

### B. The issues were actually litigated in the prior action

"In the context of issue preclusion, an issue is actually litigated when it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Cook v. Harding*, 879 F.3d 1035, 1042 (9th Cir. 2018) (simplified). In considering this factor, courts review the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts. *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511 (2009). Here, the record shows the factual and legal issues to be given preclusive effect were "actually litigated." *Cook*, 879 F.3d at 1042.

"After a nine-week bench trial, the trial court issued an extremely thorough, 128-page decision finding [Defendants] liable for 153,351 [UCL] violations and 121,844 [FAL] violations." *Johnson & Johnson*, 77 Cal. App. 5th at 310. Defendants mounted a vigorous defense, calling at least ten expert witnesses, and the findings that are the subject of this motion are from the Decision. Defendants also appealed. *Id.* at 295. The Court of Appeal largely affirmed, finding substantial evidence existed for the trial court to make each of the above findings. *Id.* at 305-06. And "[i]nasmuch as an issue was necessarily decided in a prior proceeding," as is shown below, "it was also actually litigated." *Cook*, 879 F.3d at 1042.

### C. The issues were necessarily decided in the prior action

"To be necessarily decided, California law requires only that the issue not have been entirely unnecessary to the judgment in the initial proceeding." *Cook*, 879 F.3d at 1042. None of the factual and legal findings at issue can be called "entirely unnecessary" to the Decision. Instead, they formed the bases for the 153,351 UCL violations and 121,844 FAL violations found by the state trial court, the vast majority of which were affirmed on appeal. *Johnson & Johnson*, 77 Cal. App. 5th at 306, 310. This requirement also is met. *Cook*, 879 F.3d at 1042.

### D. The trial court's findings are final for purposes of issue preclusion

1  Two sets of trial court findings are at issue: (1) the ones the Defendants appealed; and
2  (2) the findings Defendants chose not to appeal. Both sets of findings are final judgments.

### 1. The unappealed findings are final for issue preclusion

In its appeal of the Decision, Defendants never challenged the vast majority of the trial court's findings. The Court of Appeal summarized the appeal of facts as follows:

> Ethicon claims substantial evidence did not support the trial court's finding that its IFUs were likely to deceive doctors. It attacks the court's finding in two ways—first, by claiming doctors do not read or rely on IFUs when counseling and treating patients; and second, by arguing that doctors' education, training, and experience precluded a finding that they were likely to be deceived by Ethicon's IFU's.

*Johnson & Johnson,* 77 Cal. App. 5th at 329-30. Continuing to delineate what factual findings were appealed, the Court of Appeal states, "[t]he court rendered express factual findings that the IFUs and marketing materials included *literal falsehoods*—findings [Defendants have] not challenged on appeal for lack of substantial evidence." *Id.* at 350. Among other things, the trial court found (and Defendants failed to challenge) the Gynemesh "'IFUs contained false statements about mesh's properties,' including a statement the mesh possessed a bi-directional elastic property allowing adaptation to various stresses encountered in the body." *Id.* The court found, as another example, the "IFUs included 'false statements' that the mesh does not degrade." *Id.* The "unchallenged factual findings that the IFUs and marketing materials contained false statements" cannot be part of any petition for *certiorari*. *See id.*

The *Freeman* court reached the same conclusion. "[N]either of Defendants' appeals (to the California Court of Appeal or California Supreme Court) included the five factual findings to which Plaintiffs seek issue preclusion." *Freeman*, 2022 WL 3147194, at *7. The unappealed factual findings are attached hereto as Exhibit C, but can be broadly categorized as: (1) findings of the dangers and risks associated with the Gynemesh PS and Defendants' other pelvic mesh products that were not disclosed; and (2) findings the Defendants were aware of these dangers and risks before and during the time period relevant to this case.

Defendants cannot "challenge these findings" in any case before the Supreme Court—were such petition even to be filed and then accepted. *Freeman*, 2022 WL 3147194, at *7. The

findings are "final" under issue preclusion because the Decision is "immune, as a practical matter, to reversal or amendment." *People v. Santamaria*, 8 Cal. 4th 903, 942 (1994).

### 2.     The appealed findings are final for issue preclusion

The trial court's findings that were challenged and affirmed on appeal are also final. "[F]or purposes of issue preclusion 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Meridian Fin'l Serv., Inc. v. Phan*, 67 Cal. App. 5th 657, 688 (2021). In considering whether a particular judgment is "sufficiently firm to be accorded conclusive effect, courts should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered." *Id.* (simplified). Where, as here, the "parties were fully heard," the "court supported its decision with a reasoned opinion," and the "decision was subject to appeal or was in fact reviewed on appeal," the evidence "support[s] the conclusion that the decision is final for the purposes of preclusion." *Id.* at 688-89.

After a nine-week trial, during which Defendants contested the evidence against them, the state court issued a well-reasoned, 129-page opinion. The Decision was subject to appeal, and the factual findings at issue in this motion were affirmed by the Court of Appeal. *Johnson & Johnson*, 77 Cal. App. 5th at 306 ("We conclude the trial court erred in just one respect [and] conclude substantial evidence did not support the trial court's factual finding that Ethicon's oral marketing communications were likely to deceive doctors"). The trial court's findings are sufficiently final for the purposes of preclusion. *Meridian Fin'l*, 67 Cal. App. 5th at 688-89. The "California Court of Appeal's opinion[,] was a final decision on the merits" satisfying the finality requirement of issue preclusion. *Rodriguez*, 930 F.3d at 1132. And the fact the California Supreme Court has denied review, *People v. Johnson & Johnson*, 2022 Cal. LEXIS 3871, only bolsters the finality of the trial court's findings. *See In re Tomkow*, 563 B.R. 716, 720 (B.A.P. 9th Cir. 1997) (the "California Supreme Court denied Appellants' petition for review of the appellate court's decision. Thus, that decision is now final.").

Although Defendants say they intend to "petition the United States Supreme Court," ECF No. 215 at 3 (Defs.' Opp.), this does not alter the finality of the trial court's findings. *Longshoremen v. Davis*, 476 U.S. 380, 387 (1986) (the United States Supreme Court does not have "authority to review state determinations of purely state law."). The AG Action concerned Defendants' violations of the UCL and FAL, *Johnson & Johnson*, 77 Cal. App. 5th at 306, both of which are "purely state law." *Longshoremen*, 476 U.S. at 387. For a state court judgment even to be reviewable by the U.S. Supreme Court "a state-court judgment must be final in two senses: it must be subject to no further review or correction in any other state tribunal; it must also be final as an effective determination of the litigation and not of merely interlocutory or intermediate steps therein. It must be the final word of a final court." *Jefferson v. City of Tarrant*, 522 U.S. 75, 81 (1997). Therefore, for the factual findings in the Decision, the "appellate process is complete." *Samara v. Matar*, 5 Cal. 5th 322, 335 (2018).

### E. Defendants were parties to the prior action

California law requires the "party against whom preclusion is sought [is] the same as, or in privity with, the party to the former proceeding." *Rodriguez*, 930 F.3d at 1131. Both Defendants in this case are defendants in *Johnson & Johnson*, 77 Cal. App. 5th at 305. This requirement for issue preclusion is met. *Rodriguez*, 930 F.3d at 1131.

### F. Public policy supports application of issue preclusion

Applying issue preclusion in this case comports with the "public policies of preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Rodriguez*, 930 F.3d at 1131-32. These factors all favor preclusion. First, the state court trial was nine weeks and involved dozens of witnesses, lay and expert witnesses alike. *Johnson & Johnson*, 77 Cal. App. 5th at 310-16. Given the amounts at stake, Defendants had every incentive to conduct a vigorous defense. *Cf. Applied Med. Res. Corp. v. United States Surgical Corp.*, 352 F. Supp. 2d 1119, 1127 (C.D. Cal. 2005) (substantial money at issue is indicium the defendant would have fully and vigorously defended first action for applying issue preclusion). And the Decision shows the trial court

1 carefully considered and balanced all of the testimony and evidence presented in making these findings. After verdict, Defendants appealed the Decision, which resulted in a lengthy opinion from the Court of Appeal, affirming on all issues but "the trial court's factual finding that [their] oral marketing communications were likely to deceive doctors," *Johnson & Johnson*, 77 Cal. App. 5th at 306. "The opportunity for judicial review of adverse rulings is an important procedural protection against a potentially erroneous determination and is a factor to consider in determining whether [issue preclusion] applies." *Samara*, 5 Cal. 5th at 326-334. In all, "[t]here is no reason for a federal court to tackle anew the precise legal [and factual] issue[s] resolved by the California Court of Appeal," *ReadyLink Healthcare, Inc.* v. *State Comp. Ins. Fund*, 754 F.3d 754, 762 (9th Cir. 2014), especially since Defendants here never even challenged the "express factual findings that IFUs and marketing materials included *literal falsehood." Johnson & Johnson*, 77 Cal. App. 5th at 350.

Application of issue preclusion would promote judicial economy. *Rodriguez,* 930 F.3d at 1132. The facts about Gynemesh PS and whether Defendants made material misrepresentations and omissions about the mesh in the product IFUs and marketing materials are materially unchanged. Redeciding now the factual and legal issues resolved in the *Johnson & Johnson* litigation, "when the facts and [Defendants'] arguments have not materially changed from what was presented in the state proceedings, would undermine the issue preclusion doctrine's goals of comity and judicial economy." *Id.* at 1136. The trial court's findings, set out in great detail in the 129-page Decision, answer complex scientific and factual questions that would be expensive and time-consuming to re-litigate, not only for the parties but for the judicial system.

As one example, the state trial court "found the [Gynemesh PS] IFUs included 'false statements' that mesh does not degrade." *Johnson & Johnson*, 77 Cal. App. 5th at 350. This finding was "unchallenged" on appeal in *Johnson & Johnson. Id.* Allowing Defendants a second go-round, after having waived the issue on appeal, undermines the policy of promoting judicial economy. Moreover, nothing even suggests Defendants would be exposed to "harassment by

vexatious litigation" if issue preclusion is applied in this case. *See Rodriguez,* 930 F.3d at 1131-32.

### G. Applying issue preclusion is not unfair

"Once it is determined that the [issue preclusion] bar is available, the actual decision to apply the doctrine is left to the district court's discretion." *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir. 1984). The Supreme Court grants "broad discretion" to trial courts to "take potential shortcomings or indices of unfairness into account when considering whether to apply offensive nonmutual preclusion." *Syverson v. IBM Corp.*, 472 F.3d 1072, 1078-79 (9th Cir. 2007). Considerations include whether:

> (1) the plaintiff had the incentive to adopt a "wait and see" attitude in the hope that the first action by another plaintiff would result in a favorable judgment which might then be used against the losing defendant; (2) the defendant had the incentive to defend the first suit with full vigor, especially when future suits are not foreseeable; (3) one or more judgments entered before the one invoked as preclusive are inconsistent with the latter or each other, suggesting that reliance on a single adverse judgment would be unfair; and, (4) the defendant might be afforded procedural opportunities in the later action that were unavailable in the first and that could readily cause a different result.

*Id.* at 1079 (simplified). These factors militate in favor of applying issue preclusion here.

#### 1. Plaintiff did not take a "wait and see" approach

No evidence even suggests Mrs. Parks has taken a "wait and see" attitude toward prosecuting her case. Mrs. Parks initiated her action approximately three years before the California Attorney General filed suit against Defendants. *Compare* ECF No. 205 at 5 n. 1 (Defs.' mot. to bifurcate) ("Plaintiff's complaint was served on July 12, 2013, and deemed filed as of that date.") *with* Ex. A at 1 (Decision) (AG Action filed in 2016). Before the trial judge finished his Decision on January 30, 2020, the deadlines in *Parks* for discovery, dispositive motions, and *Daubert* challenges already had passed. ECF No. 15 at 2 (Wave 13 docket control order); Ex. A at 88 (Decision); *see Parks*, 2020 WL 6118774, at *1.

Discovery and *Daubert* challenges in *Parks* were completed years before the Decision issued, and the MDL court's transfer order explains there had been "extensive development"

of the mesh case "over a period of years." ECF No. 55 at 1. These facts show Plaintiff never took a "wait and see" attitude. *Syverson*, 472 F.3d at 1079.

### 2. Defendants vigorously defended the AG action

Defendants also had incentive to defend against California in the *Johnson & Johnson* litigation. *Syverson*, 472 F.3d at 1079. The Attorney General alleged Defendants "misrepresented the risks and complications of [their] pelvic mesh devices to doctors and patients" in California, violating the UCL and FAL. Ex. A at 2 (Decision). The Attorney General requested an injunction and civil penalties. *Id.* A single act violating both the UCL and FAL may be subject to a monetary penalty of up to $5,000. *People v. Dollar Rent-a-Car Sys., Inc.*, 211 Cal. App. 3d 119, 132 (1989); Ex. A at 76 (Decision). Given the sales volume of Defendants' transvaginal mesh product, as reflected in the nearly 40,000 cases filed in the *Ethicon* MDL, significant money was at stake in *Johnson & Johnson*. *See* ECF No. 55 at 1 (MDL transfer order). "In light of the large monetary amounts" at issue, Defendants "had every incentive to litigate [*Johnson & Johnson*] fully and vigorously." *Applied Med.*, 352 F. Supp. 2d at 1127. *Accord Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 (1979) ("First, in light of the serious allegations made in the [government's] complaint against the petitioners, as well as the foreseeability of subsequent private suits that typically follow a successful Government judgment, the petitioners had every incentive to litigate the … lawsuit fully and vigorously.").

Further, Defendants were given considerably more time (nine weeks) in the AG Action to contest and refute the issues than the parties are granted in this case (approximately 7-8 days). *See* Cantrell Decl. ¶ 5. Defendants used this additional time to call over twenty witnesses to testify, including ten experts and at least seven current or former Ethicon employees. *Id.* at ¶ 3. The facts demonstrate Defendants were given ample opportunity to contest (and did contest) each and every one of the trial court's findings.

### 3. Alleged inconsistent judgments do not bar preclusion

In court papers, Defendants have argued issue preclusion would be unfair because "multiple juries have reached opposite conclusions as to those same facts in other trials." ECF No. 215 at 4 (Defs.' Opp.). Plaintiff is unaware of any trial involving Gynemesh, the medical

device at issue here. *Parks*, 2020 WL 6118774, at *1. In *Freeman*, a decision just issued in August, Defendants were unable to produce any exhibits to "demonstrate that the jury made factual findings related to the factual findings made by the state court judge at issue in this case." *Freeman*, 2022 WL 3147194, at *5. As in *Freeman*, their primary example is the "jury verdict in *Shears v. Ethicon, Inc.* (from the Northern District of West Virginia), which concerned whether Defendants' mesh degrades." *See id.*; ECF No. 215 at 4 (Defs.' Opp.). In *Shears*, however, the "jury did not proceed to questions concerning whether the mesh degrades or caused any injuries, which are [among] the findings at issue here." *Freeman*, 2022 WL 3147194, at *5. The "jury verdicts do not show inconsistent jury results because the jury did not expressly make a contrary finding to the state trial judge's findings in this case." *Id.*

Were *Shears* inconsistent with the "unchallenged factual findings" in the Decision, *Johnson & Johnson*, 77 Cal. App. 5th at 350, applying issue preclusion still would be proper. "The general rule under these circumstances is that the third court should give *res judicata* effect to the *last* previous judgment entered." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 328 (9th Cir. 1988). *Shears* came down in March 2022, ECF No. 215-1 at 2 (Defs.' Opp.), before *Johnson & Johnson* went final—via the April 2022 appellate decision and then the denial of review. *Johnson & Johnson*, 2022 Cal. LEXIS 3871; *Johnson & Johnson*, 77 Cal. App. 5th at 295. Nothing prevents the Court from applying "offensive issue preclusion in the presence of inconsistent judgments," *Robi*, 838 F.2d at 330, though this has no bearing here.

### 4. No procedural opportunities bar issue preclusion

Defendants have no "procedural opportunities in the later action that were unavailable in the first and that could readily cause a different result." *Syverson*, 472 F.3d at 1079. First, the differences between the standards for expert evidence under *Daubert* and California's *Kelly-Frye* standard "do not rise to the level of procedural differences contemplated under this *Parklane* factor." *Freeman*, 2022 WL 3147194, at *5. Second, issue preclusion would not give Mrs. Parks an "end-run around" relevancy inquiries as to other Ethicon transvaginal products because "any finding of issue preclusion to facts [would] only pertain[] to the [Gynemesh PS] and [would] not grant preclusive effect to evidence concerning other products not at issue" such

as the TVT line of slings. *See id.* Third, applying issue preclusion would not "unfairly deprive [Defendants] of the ability to offer evidence at trial that has developed since the state court trial that took place between July and September 2019." *Id.* at *6. For "even if the new evidence was not previously available, under California case law, collateral estoppel will still apply if the new evidence goes only to the weight of the evidence in support of the party who opposes preclusion." *Khanna v. State Bar of Cal.*, 505 F. Supp. 2d 633, 650 (N.D. Cal. 2007); *Freeman*, 2022 WL 3147194, at *6. Fourth, Defendants' Seventh Amendment rights would not be infringed by applying issue preclusion, *Parklane*, 439 U.S. at 337, though the Decision came from a bench trial. *Freeman*, 2022 WL 3147194, at *6-7. Like *Freeman*, the Court should find "there are no procedural differences between California and federal courts that render issue preclusion unfair in this case." *Id.* at *6.

## IV. The Court Should Judicially Notice The Statement Of Decision

Plaintiff requests the Court take judicial notice of the Decision and other materials from the AG Action that Plaintiff cites in support of her motion for partial summary judgment. "In determining whether issue preclusion exists, a court may take judicial notice of all relevant facts that are shown by the court's own records, as well as public records from other proceedings." *Freeman*, 2022 WL 3147194, at *5; *see also* Fed. R. Evid. 901(b)(7).

## V. Conclusion

Plaintiff requests this Court adopt the state court's findings from the AG Action via issue preclusion by granting the summary judgment motion. "Factual findings can support a decision on the merits of a claim even if they do not themselves resolve an element of the claim." *Key v. Tyler*, 34 Cal. App. 5th 505, 534-536 (2019). For the above reasons, Plaintiff's Motion for Partial Summary Judgment on Issue Preclusion should be granted.

Dated: September 9, 2022

/s/ Chris Cantrell
Chris W. Cantrell, Esq.
Doyle APC
550 West B Street, 4th Floor
San Diego, CA 92101
(619) 736-0000 phone

(619) 736-1111 fax
chris@doyleapc.com

William J. Doyle, II
Doyle Lowther LLP
4400 NE 77th Ave., Ste. 275
Vancouver, WA 98662
(360) 818-9320 phone
bill@doylelowther.com

James R. Hail
Law Office of James Hail
6813 Red Fox Court
Granbury, TX 76049
(619) 213-2972 phone